## Lanciscus v. The Louisville Trust Company, Executor, etc., et al.

### Bartlett v. Same.

(Decided November 30, 1923.)

Appeals from Jefferson Circuit Court
(Chancery Branch, First Division).

1. Wills—Duty of Court to Ascertain Intention.—The first duty of a court in the interpretation and construction of wills is to ascertain the intention of the testator.

2. Wills—Future Interest May be Created in Personalty.—A testator may create a life estate in personalty in the first taker with power of disposition by him, and create a future interest in the remainder if not so disposed of; the future interest not being a technical "remainder" interest if the property is non-perishable, but only conferring on the future taker title to the remnant or residue of the property.

3. Wills—Testator May Make Any Disposition of Property Not Contrary to Public Policy.—The testator may make any disposition of his property or attach any condition in his will which is not contrary to public policy, or forbidden by law.

4. Wills—Testator Could Give Life Estate with Power of Disposition During Life Only.—Testator could give a life estate in personalty for and during the lifetime of the beneficiary, and then proceed to measure the power and authority, and in doing so include all those of an absolute owner except a limitation upon his right to dispose of the property by will, it being only where a certainly absolute title or estate is given that restraint against alienation is disallowed.

5. Wills—Husband Held Given Life Estate in Personalty with Remainder to Others.—A will giving the residue of an estate to tes-

tatrix's husband for and during his lifetime, but with power in him to use and dispose of during his lifetime for his support, etc., all or any part, and at his death the rest and residue or any part thereof not disposed of by him to be' given to certain others, held to create a life interest in the husband, with all the powers and authority over the property of an absolute owner, except that he could not make testamentary disposition of any part of it.

HENRY I. FOX for appellant H. C. Lanciscus.

JAMES W. STITES for appellant James Herbert Bartlett.

JOHN B. BASKIN for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming the judgment in each case.

These two appeals were separately prosecuted from a judgment of the Jefferson circuit court, chancery branch, division number one, construing certain clauses of the last will and testament of Mrs. Rose Ethel Bartlett, late wife of the appellant, James Herbert Bartlett. Certain specific devises were made by the testatrix in her will, among which were $1,000.00 to each of seven named charitable institutions. In clause IV she gave to the Louisville Trust Company in trust for her nephew, the appellant, Herbert C. Lanciscus, $50,000.00, to be invested and reinvested by it and the net income to be paid to the *cestui que trust* monthly during his life and at his death the trust ceased and if he died with lineal descendants the property was given to them, free from the trust, but if he left no such descendants it was then devised equally to the named charitable institutions. By clause V of her will she gave to the same trustee for the use and benefit of her sister, Mrs. Anna Perry, $10,000.00, and directed that the net income from it be paid to her during her life and at her death to be paid to the same nephew monthly for his lifetime, when the trust should cease and the property should go to his lineal descendants, if any, but if not to the same charities.

Clause VI of the will says:

"All the rest and residue of my estate, real, personal and mixed and wheresoever situated, I give, devise and bequeath to my husband, James Herbert Bartlett, of Anchorage, Ky., *for and during his lifetime,* but with power in him to use and dispose of, *during his lifetime,* for his support, maintenance, comfort and pleasure, all or any part of said rest and residue of the estate; and my execu-

tor shall deliver the corpus or principal of said rest and residue of my estate to him as soon as practicable after my death. No one shall be permitted to question his disposition of said estate, or any part thereof. If, however, at the time of his death, said rest and residue of said estate, *or any part thereof*, shall not have been disposed of by him, I give and devise the same to the Louisville Trust Company in trust, for the use and benefit of my said nephew, Herbert C. Lanciscus, to be invested and reinvested in property and securities as allowed by law and the net income therefrom to be paid to my said nephew monthly during his lifetime, and after his death, the principal of said rest and residue of said estate, freed from the trust, shall be delivered to and become the property of his lineal descendants, if he leave lineal descendants, but in the event he dies leaving no lineal descendants, then the principal of said rest and residue of said estate, freed from the trust, shall be paid and distributed equally to the aforesaid charities.

"I expressly provide that my said nephew shall not anticipate or assign any of the income from the funds mentioned in clauses IV, V and VI of this will, and if he does assign or anticipate any of said income, it shall be the duty of said trustee to resist the payment of the same, and if the court of last resort decides that such anticipation or assignment of the income by my nephew is valid, then it is my will that the interest of said nephew in said income shall immediately cease and the principal of said funds mentioned in clauses IV, V and VI of this will and any accrued income then existing shall be delivered to and become the property of my said nephew's lineal descendants, if he then has any, freed from the trust, and if he has no lineal descendants, then the same shall be delivered to and become the property of said charities absolutely and freed from the trust. No one shall have the right to demand any bond or security whatever of my said husband, nor shall any one have the right to demand of him an accounting of the principal or income from the said rest and residue of my estate." (Our italics.)

This equity action was brought by the trust company against the immediate and remote devisees for a construction of the will, and upon submission the court sustained the inhibition by testatrix against assigning or anticipating the income by her nephew from his devise contained in the second literary paragraph of clause VI, and further

adjudged that the husband of the testatrix took under the same clause less than an absolute estate in the devise therein made to him, but that he had the unlimited right during his lifetime to spend, use and dispose of for his pleasure as much of the property given to him as he saw proper, even to all of it, but that if he died without exercising his right of disposition as to any of it, then the residue would go as directed in the same clause, and from that judgment the two appellants prosecute separate appeals.

At the beginning it may be observed that we are relieved from the task of searching the contents of the will to ascertain the intention of the testatrix, which is the first duty of a court in the interpretation and construction of wills; for in this case her intention is plainly and unmistakably expressed, which, as to the devise to the husband, was that he should possess all of the powers with reference to the property devised to him *during his lifetime* that an absolute owner of the same character of property possesses *while living,* and the only restriction imposed on the devise, was that he should not have the right to make a testamentary disposition of any portion of it, not consumed or otherwise used by him as directed in the will, *during his lifetime.*

It is strenuously argued in behalf of the husband that at common law the only characteristics of absolute ownership in personal property were the right of possession and the right of absolute disposition, and that when they are combined the entire estate in the property is vested in the one having those rights. It is, therefore, insisted that under the rule contended for, the attempted limitation of the ''remainder'' interest in the husband's devise was void because, under the terms of the will, the first taker (the husband) took all of it and there was nothing left to which the attempted ''remainder'' interest could attach. Necessarily that argument must and does proceed upon the theory that the word ''remainder'' has the same significance when applied to the creation of future interests in personalty that it has in the creation of the same character of interests in realty. If the premise is correct the conclusion contended for would necessarily follow, but we are not prepared to admit the similitude. If the devised personalty is given in specie and is nonperishable, nor will be fully consumed in its use by the life tenant, there may be a ''remainder'' interest created in it similar to that in real property; but, if the property

is of a perishable nature and if the use of it by the life tenant destroys or consumes it the word "remainder," as applied to a future interest, has no such significance as when applied to the same interest in realty. When applied to realty the word designates a future title to the whole of the property, while if applied to the aggregate of personalty, perishable or nonperishable, it can at most refer and attach to the *residue* or *remnant* of the property. In other words, when applied to real estate it has reference to the *title,* and when applied to such personalty it refers to the *quantity* or *amount* of the residue or remnant of the property. The same distinction is actually true, whether heretofore so applied in the law or not, as to intangible and nonperishable personal property when not devised *in specie* but in bulk.

No better illustration of our meaning may be cited than the facts of the present case where it is conceded that all of the property devised to the husband (with perhaps the exception of some household goods and possible heirlooms) consists of intangible personal property composed of notes, bonds, cash, stocks, etc., the aggregate value of which is something like $540,000.00. It is necessarily nonperishable, and the only way the aggregate amount may be reduced, or part of it consumed in its use, is for the husband to expend it under the authority conferred by the will. If he fails to do so as to all of it what is left will not be in law a technical "remainder," but rather a *residue,* or remnant which he might have appropriated during his lifetime, had he so desired to exercise his rights necessary to do so.

As to the right to create a technical remainder interest in the character of personal property above, we refer to sections 135-139, inclusive, of Schouler on Personal Property, fifth edition. It is shown in section 136 of the same work that the doctrine of technical *remainders* in personal property had no place in the ancient common law, "and this because of the perishable nature of such property, its significance, and its movable characteristics," by virtue of the latter of which the first taker might remove, secrete or destroy the property and put it beyond the reach of the remainderman or the reversioner. But the learned author points out in the sections referred to that the doctrine as to nonperishable personal property has long since been exploded; but by section 140 it is shown that the modern rule has no application to per-

ishable property of the nature described, and in it, as in section 141, it is likewise shown that the technical designation of *remainder* may be applied to a future interest in nonperishable personal property when devised *in specie*. Notwithstanding such distinctions, this and other courts, since the departure from the ancient common law rule, have generally referred to a future beneficial interest in personal property as one *in remainder,* regardless of whether it was perishable or given *in specie.* Two cases so holding from this court are McCullough v. Anderson, 90 Ky. 126, and Commonwealth v. Manuel, 183 Ky. 48. In those two cases it clearly appeared that personal property was involved, and it was held that a remainder interest therein might be created without the opinions taking notice of the character of the property, or of the specific terms of the conveyance. Many other cases from this court have upheld the creation of future interest in property of the testator where it did not certainly appear whether it was personalty or realty, but necessarily some of the latter was included under the terms of the will or wills under consideration. The number of cases so holding are so numerous that it will be unnecessary to cite any of them in this opinion. But whether the property involved was realty or personalty or both, those cases uphold the right of a testator to create a *life estate* in the first taker, with power of disposition by him, and to create a future interest in the remaining portion of it not so disposed of. It will be seen that the point we have been endeavoring to make is, that the future interest so created is not a technical "remainder" interest, if the property is nonperishable personalty but only confers on the future taker the title to the *remnant* or *residue* of the property. In that view of the case many of the objections against the creation of a future interest as to personal property are removed, and the ancient cases cited by learned counsel for the husband in denying the right to create a technical remainder in personalty would have no application, even if there had been no modern departure from that doctrine.

But apart from the foregoing, we have here a case (adopting the construction of appellant's counsel), where all the rights, powers and authority of the husband with reference to the disposition of the devised property, are the same as an admittedly absolute owner, save and except he must exercise them *during his lifetime* and he can not make a testamentary disposition of the property,

which latter an undeniable owner may do. If that was the true situation the question presented would then be, whether a testator may limit, or withhold from, his otherwise absolute devisee any of the powers incident to such ownership. It is universally true that a testator may make any disposition of his property, or attach any condition in his will that is not contrary to public policy or forbidden by law, and we have been cited to no case holding that it was against public policy, or forbidden by any law, to withhold from a donee the power to dispose of the devised property *by will,* although he may be given all authority with reference thereto during his life that is possessed by an absolute owner. Since, however, the assumed situation is not the exact one presented, we will not pursue the discussion of that phase of the question further, or attempt its final determination.

A more accurate statement of the true situation here is, that the testatrix gave by express language to her husband the property included in clause VI of her will "for and during his lifetime." She then proceeded to measure the power and authority which he might exercise over it during that period, and in doing so she added to and enlarged the usual and ordinary powers of only an owner for life. We know of no public policy or any rule of law forbidding any such enlargement; nor are we familiar with any law limiting the extent of such enlargement, if attempted, or of any that would require the testator in such cases to include therein (or not to stop short of) all the rights and authority possessed by an absolute owner. In other words, we have been pointed to no authority, nor have we been able to find any, requiring a testator attempting such enlargement to include all of the powers and authority possessed by an absolute owner. On the contrary, common sense, justice and logic would seem to allow and uphold a *pro tanto* enlargement by the donor of the power and authority usually possessed by only a life owner, and to permit the testator to curtail them at whatever point he saw proper, and if he did not include in the enlargement all of the powers possessed by an absolute owner, the ones omitted would be a valid limitation. To simplify our meaning, if a testator attempts to add to the rights and powers of a strictly life owner, we know of no rule preventing him from stopping his addition at any point he pleases.

Under the above outlined situation and conditions of the devise to the husband in this case, his powers and authority as a life owner were enlarged by the testatrix, so as to include all those of an absolute owner, except the limitation upon his right to alienate or dispose of it by will, and we have been cited to no case or text writer forbidding the imposition of such a restraint by a testator. It is only where an undisputed absolute title or estate is given that the restraint against alienation by any method is disallowed. Hence in section 1340, page 1478, of Schouler on Wills, sixth edition, volume 2, it is said:

"This consideration should guide us when examining the cases which relate to express restrictions upon alienation under a will.   Conceding that a restraint upon alienation is *per se* repugnant to an estate in fee or absolute gift of any kind, it does not follow that such a condition must always be rejected as repugnant; for the context may show that this restriction or qualification was of the very essence of the devise or bequest, and that no fee, no *absolute gift,* was contemplated at all, but a *qualified* gift, obnoxious in no respect to the law or public policy.   We ask, then, what did the will mean, and whether its meaning was to qualify or restrain in a legal and proper manner, or, instead, to annex something to a *clear gift* incompatible with its proper enjoyment, or in a legal sense impolitic and impossible; and in the latter case the gift is pronounced good by throwing out the repugnant annexation, but in the former by treating the qualification as blended in the gift and a component element."   (Our italics.)

When we ask in this case, "What did the will mean?" we find that it *expressly* created a *life interest* in the husband of testatrix with all the powers and authority over the property of an absolute owner, except that he could not make testamentary disposition of any part of it.   The restraint did not "annex something to a clear (absolute) gift incompatible with its proper enjoyment," nor did it render the gift "in a legal sense impolitic and impossible."   On the contrary, the qualification "blended in the gift" and was "a component element" of it.

Aside from the express purposes for which the wife devised her property to her husband, and, as it would seem, to put beyond all question his right to dispose of the corpus of the property in any manner he saw proper during his lifetime, she said: "No one shall be permitted

to question his disposition of said estate or any part thereof.'' That, and other language found in the will, clearly differentiates this case from the many cited ones in brief of the guardian *ad litem* to the effect that an ordinary life tenant of either real or personal property, with no enlargement on his powers as such, may not dispose of the corpus of the property for any other purpose except those named in his title paper. For that reason it will be unnecessary to cite any of those opinions, since they announce an old and familiar rule with which we are in full accord, but which does not apply to the facts of this case.

We, therefore, conclude that the judgment as to each of the appellants was proper, and it is accordingly affirmed.