**Monty M. SNYDER, Executor of Estate of Jessie Snyder, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 4053.**

United States District Court
W. D. Kentucky,
at Louisville.

Feb. 20, 1962.

Herman G. Handmaker, Homer Sobel, Samuel M. Rosenstein, Louisville, Ky., for plaintiff.

William E. Scent, U. S. Atty., Louisville, Ky., for defendant.

BROOKS, Chief Judge.

By this action plaintiff seeks a refund of estate taxes paid as a result of a determination by the Commissioner of Internal Revenue that plaintiff's decedent possessed at death a "general power of appointment" over her deceased husband's residuary estate and that the property subject to the power, that portion of the residuary estate not consumed or otherwise disposed of by her prior to her death, was includable in her gross estate by reason of Section 2041 of the Internal Revenue Code of 1954, 26 U.S. C.A. § 2041. The specific question raised by defendant's motion to dismiss is whether the language of the husband's will, interpreted according to Kentucky

law, created in the wife that type of power or measure of control which Congress intended to treat as a general power of appointment for estate tax purposes. If so, there is also in issue the constitutionality of the tax as applied under the facts of this case. The facts have been stipulated.

Ben Snyder died on February 7, 1946 leaving a will which had been executed in 1928 and republished without significant change by a codicil dated July 20, 1945. The following excerpts from and paraphrases of portions of his will show the scope of the language he used to define his wife's powers and provide a basis for determining whether, under Kentucky law, the wife was given an estate tax "general power of appointment."

In Items 1 and 2 the testator provided for the payment of debts and the payment of modest bequests to charities to be selected by his wife, and in Item 3 he disposed of the residue of his estate as follows:

> " * * * all the rest and residue of my estate, of whatsoever kind and wheresoever situated to my beloved Wife, JESSIE SNYDER, for and during her life with power of disposition over both the principal thereof and the income received therefrom, in such manner as she may see fit."

Item 3 also directed that a certain sum should be paid from the residuary estate to each of his children who attained the age of twenty-one. However, the testator added:

> "I do not desire, by any provision in this will, to restrict my Wife in the handling or use of any part of my estate and the decision as to whether or not there is sufficient estate in her hands at any time to pay the sums above directed to my several children shall be conditioned

upon and lie solely within her discretion. She shall not be required to account to any person or to any Court for any portion of the income or principal of said estate."

In Item 4 the testator made elaborate provision for "such of my estate as may be then remaining" to be distributed equally among his children upon the death of his wife, but the provision that "The estate paid over to my children, or their issue, after the death of my Wife, *should such estate be remaining,* shall be in securities * * * * " (Emphasis added.) is evidence that the testator contemplated the possibility of a complete extinguishment or consumption of his estate prior to his wife's death.

In Item 5 the testator named Jessie Snyder as the executrix of his will. In this item he provided:

> "Should the business of Ben Snyder, Incorporated, be then earning a fair return on the investment, I prefer that the business be continued so long as my Wife shall own a controlling interest therein, and my said Wife shall hold the office of President of the Corporation. However, my Wife is hereby empowered to sell or otherwise dispose of said business or any or all of my estate should she see fit and to pass good title thereto as an individual and she shall not be required to obtain the consent thereof of any Court or any person or account to any Court or Person for the reinvestment of the proceeds of any such sale and no purchaser shall be required to look to the application of the proceeds of any such sale." [1]

Finally, the testator urged his wife to enter into a written contract of agency with a named trust company to assist her in the management of his estate. Here again, however, the testator specified that the employment of the trust

---

1. In Item 6, on the other hand, where the testator provided for the administration of his estate by alternate or successor executors in the event of his wife's death during the infancy of any of their children or before making her settlement as executrix, he expressly provided for the reinvestment of the proceeds of any sale or disposition of his estate.

company should not be construed as mandatory and that his wife was to "exercise her own judgment in this as in all other matters." He declared that "the employment of said Trust Company shall in no wise cancel or limit my Wife's power and authority as Executrix for I desire her to retain complete control of my property."

Jessie Snyder died on February 12, 1957 without having used for her own benefit any of the principal of her husband's residuary estate, which was comprised largely of stock in the family business, Ben Snyder, Inc., but she had made substantial inter vivos gifts, totaling many thousands of dollars in value, of the principal of her husband's estate to her children, to her sons-in-law and her daughter-in-law, to her grandchildren and a great grandchild, and to a grand-daughter-in-law. There is no showing that anyone questioned during her lifetime her right to make these transfers. She also attempted to dispose of the remainder of his estate by her will, which directed that the remaining Ben Snyder, Inc. stock be placed in trust for the equal benefit of the five children and further provided that her son, as trustee, would have uncontrolled discretion in voting these shares.

█ Initially, state law is to be applied to these facts to determine the limits of Mrs. Snyder's powers, unless, as plaintiff contends, the question has already been answered in state court proceedings which would be controlling in this case. The following additional facts relate to this contention.

Subsequent to her death a dispute arose with the Kentucky Department of Revenue as to whether the securities which comprised the residue of Ben Snyder's estate were properly included in Jessie Snyder's estate for inheritance tax purposes, the Kentucky Commissioner of Revenue contending that Jessie Snyder had a fee interest under the terms of her husband's will. In a suit for a declaratory judgment the complaint expressly stated that the securities involved in the controversy were those remaining from Ben Snyder's estate which were still in the possession of Jessie Snyder's executor, and neither the complaint nor the Commissioner's answer made any reference to the term "power of appointment." Ben Snyder's heirs at law, his children, were made parties defendant, and their answer adopted the statement of facts contained in the complaint, which made no mention of Mrs. Snyder's substantial inter vivos gifts to her children, in-laws and grandchildren. Rather, they asserted their right to immediate possession of the stock not disposed of by Jessie Snyder and denied that the latter had any testamentary power over the residue of Ben Snyder's estate. It does not appear in the record of the state court proceeding that there was any mention or argument on the validity of Mrs. Snyder's inter vivos gifts, and, as stated, only Ben Snyder's children, who would take the property as Ben Snyder's heirs-at-law even if the appointments were set aside, were made parties. The other appointees, whose interests were clearly adverse to those of Ben Snyder's children, were not before the court. The Franklin Circuit Court decreed (1) that Jessie Snyder took only a life estate; (2) that her interest in the securities terminated at her death; (3) that she had "during her lifetime only, a limited power of invasion, but did not have a general power of appointment, and she had no power, right or authority to dispose of those securities * * * by her last Will and Testament and any attempted disposition, control or directions by trust or otherwise thereof or of any part thereof by her in her said Last Will and Testament are of no force or effect since her rights and interest therein were completely terminated upon her death."

Thereafter, in a proceeding for the appointment of an administrator de bonis non of Ben Snyder's estate the Probate Division of the Jefferson County Court entered an order empowering the administrator de bonis non to demand the return of those securities which Jessie Snyder had transferred prior to her

death. The order erroneously recited that the Franklin Circuit Court had determined in the aforementioned decree that Jessie Snyder did not have the power to make these transfers.

In determining what property interests were created in this case, state court decisions are controlling, Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465; Freuler v. Helvering, 291 U. S. 35, 54 S.Ct. 308, 78 L.Ed. 634; Pitts v. Hamrick, 228 F.2d 486 (C.A.4); Gallagher v. Smith, 223 F.2d 218 (C.A.3); Eisenmenger v. Commissioner, 145 F.2d 103, 156 A.L.R. 741 (C.A.8); Gordon v. United States, 163 F.Supp. 542 (D.C.W.D. Mo.). There may be some question, however, as to whether a decree of the Franklin Circuit Court should be given the same effect as would a decision of the Court of Appeals of Kentucky. See Faulkerson's Estate v. United States, 193 F. Supp. 410 (N.D.Ind.). Nevertheless, the Franklin Circuit Court did not have before it and did not decide the question presented here. That court had only to determine whether, as the Kentucky Commissioner of Revenue contended, Jessie Snyder had a fee interest in the securities, and, if not, whether she possessed the power to exercise testamentary control over the securities not previously disposed of by her. The decision did not determine the extent of her inter vivos powers since (1) the complaint did not allege any facts or raise any issue regarding the wife's inter vivos powers and there was no demand for such a determination; (2) the Commissioner of Revenue, who could have raised the issue by his pleadings, did not do so; (3) there was no issue on the facts alleged whereby Ben Snyder's heirs-at-law could properly have presented the matter to the court (especially without adverse interests being represented); and (4) there is no showing in the record that the court actually considered this question.

■ On this state of the record what is apparently a chance expression by the state court regarding an issue not raised must be disregarded. Webster v. Fall, 266 U.S. 507, 45 S.Ct. 148, 69 L.Ed. 411;

New England Mut. Life Ins. Co. v. Mitchell, 118 F.2d 414 (C.A.4), cert. denied 314 U.S. 629, 62 S.Ct. 60, 86 L.Ed. 505; Delong v. Jefferson Standard Life Ins. Co., 109 F.2d 585 (C.A.5), cert. denied 310 U.S. 635, 60 S.Ct. 1081, 84 L.Ed. 1405. Moreover, a determination that Jessie Snyder did not have a general power of appointment, as that term is used in Kentucky law, is not necessarily conclusive of whether she had the type of power which Congress has defined as being taxable as a general power of appointment for estate tax purposes. Morgan v. Commissioner, 309 U.S. 78, 60 S. Ct. 424, 84 L.Ed. 585. Therefore, this will must be interpreted independent of the state court proceedings and in accordance with the Kentucky law as pronounced by its court of last resort.

■■ The will construction urged by the plaintiff, that Mrs. Snyder could encroach upon the principal of her husband's estate only for necessities, is properly confined to cases where a power to invade principal is not expressly granted but arises only by implication from a gift over of "what remains" or "the unconsumed portion" of the estate, or the like. In such cases and in cases where the testator has used words of doubtful meaning, the Kentucky Court holds that the life tenant may not waste the estate or give it away, Dennis v. Trustees of Choateville Christian Church, Ky., 290 S.W.2d 601; St. Joseph Hospital, Lexington v. Dwertman, Ky., 268 S.W.2d 646; Collings v. Collings' Ex'rs, Ky., 260 S.W.2d 935; Trustees of Presbyterian Church v. Mize, 181 Ky. 567, 205 S.W. 674, 2 A.L.R. 1237, but these limitations result, for the most part, from an application of the cardinal rule of will construction, announced in many cases, e. g., Hanks v. McDanell, 307 Ky. 243, 210 S. W.2d 784, 17 A.L.R.2d 1; Berner v. Luckett, 299 Ky. 744, 186 S.W.2d 905, which requires the Court to ascertain the testator's intention from the whole will and to give it effect. In any event, the settled law of Kentucky is that the testator's intention, clearly expressed, prevails over rules of construction, Moore

v. Morris, Ky., 258 S.W.2d 908, and nothing in Kentucky law precludes a testator from granting to a life tenant the power to use and dispose of the principal of the estate, even to the complete extinguishment of remainder interests, if such an intention is clearly manifested. Lanciscus v. Louisville Trust Company, 201 Ky. 222, 256 S.W. 424; Hall v. Hall, Ky., 237 S.W.2d 55; Morgan v. Meacham, 279 Ky. 526, 130 S.W.2d 992; McCullough's Adm'r v. Anderson, 90 Ky. (VIII Hines) 126, 13 S.W. 353, 7 L.R.A. 836.

■ The language of Ben Snyder's will places almost beyond question the right of Mrs. Snyder to consume the estate without reference to her needs or to any other standard, and it unmistakably expresses the testator's intention to subordinate completely the interests of remaindermen to the desires of the life tenant during her lifetime. In this respect the will under consideration here is unlike the wills which were construed in many of the cases relied upon by the plaintiff. See, e. g., Sisson v. Sisson, 208 Ky. 843, 272 S.W. 15; Trustees of Presbyterian Church v. Mize, 181 Ky. 567, 205 S.W. 674, 2 A.L.R. 1237; Embry's Ex'x v. Embry's Devisees, 102 S.W. 239, 31 Ky.Law Rep. 295; and Martin v. Barnhill, 21 Ky.Law Rep. 1666, 56 S.W. 160. (The case of Price v. Price, 298 Ky. 608, 183 S.W.2d 652, quoted from at length in plaintiff's brief, was expressly overruled in Weakley v. Weakley, Ky., 237 S.W.2d 524.)

It also seems clear that this case is governed by the line of cases wherein the life tenant's power of disposition other than by will was found to be unlimited. Moore v. Morris, supra; Weakley v. Weakley, Ky., 237 S.W.2d 524; Lickteig v. Lickteig, 236 Ky. 540, 33 S.W.2d 641; Struck v. Lilly, 219 Ky. 604, 293 S.W. 153; Lanciscus v. Louisville Trust Company, supra. The decision of this Court on this issue in Boyd v. Gray, D.C., 175 F.Supp. 57, unquestionably supports this view of state law. Where, as here, the husband places complete trust in his wife's judgment, it is not unlikely that he would intend that she have the power to use the property accumulated during their marriage without being accountable for waste and even the power to give the property away if she chose. This is the intention he manifested in this case, and there is not one hint of any limitation upon his wife's power of use or disposition anywhere in this carefully drawn will except as to a testamentary disposition of the property.

It is concluded, therefore, that Ben Snyder intended his wife to have the power during her lifetime to use the property just as she did, to make gratuitous appointments of the property without reference to her own needs or interests, as well as the power to appoint to her creditors; that he manifested an intention that Jessie Snyder should have all the rights of an absolute owner of the property except the power to dispose of it at her death; and that Kentucky law in no way limited her use or disposition of the property except as the testator had done so by withholding the power to dispose of it by will. If it were necessary to decide, there is good authority for holding that Mrs. Snyder would have become the absolute owner of the proceeds of a sale of any of the property in Ben Snyder's estate. See Lickteig v. Lickteig, supra.

The next question is whether it was the intention of Congress to include in the gross estate of a decedent property subject to the type of power possessed by plaintiff's decedent, or to state the question another way, must a decedent's power include testamentary control before the power will be deemed a "general power of appointment" within the meaning of Section 2041.

"General power of appointment" is defined in Section 2041(b) as "a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate; except that—

"(A) A power to consume, invade, or appropriate property for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support, or mainte-

nance of the decedent shall not be deemed a general power of appointment."

The exception itself is strong evidence of the rule Congress intended to establish, and there is implicit in this exception the converse proposition that a power to consume, invade, or appropriate for the benefit of the decedent which is not limited by an ascertainable standard will be deemed a general power of appointment, even though the power might not extend to making gifts of the property. However, Mrs. Snyder was empowered not only to appoint to her creditors without limitation, that is, to spend the property for her own benefit and pleasure, but also to give the property to others during her life. This is within the statutory definition and not within the exception, and for purposes of the estate tax, this is a general power of appointment, whether or not she could have "appointed" the property to herself in the sense of being able to exercise testamentary control over the unconsumed portion. The clear import of the applicable Treasury Regulations is that such a power will be deemed a "general power of appointment." See Treasury Regulations on Estate Taxes (1954 Code), Sec. 20.2041–1 (c).

Although the availability of the marital deduction under Section 2056 depends upon the surviving spouse being able to appoint to herself as unqualified owner, the test being one of absolute ownership, here the important consideration is the measure of control the decedent had over the property at death. Morgan v. Commissioner, 309 U.S. 78, 60 S.Ct. 424, 84 L.Ed. 585. That Section 2041 encompasses powers of the sort granted to Mrs. Snyder was tacitly recognized in Pittsfield National Bank v. United States, 181 F.Supp. 851 (D.C.D.Mass.) and Barritt v. Tomlinson, 129 F.Supp. 642 (D.C.S.D. Fla.), although in both of those cases the tax was held inapplicable by reason of the limited right of the wife to exercise the power only for necessities. Both

cases, besides involving local law other than Kentucky law, are also factually distinguishable from this case.

It is concluded that the type of power granted to Mrs. Snyder was defined by Congress as a general power of appointment for purposes of the estate tax, and it follows, therefore, that the property was properly includable in Mrs. Snyder's estate under Section 2041, unless the tax, as applied under the facts of this case, is unconstitutional.

■ However, the Court's view of Jessie Snyder's power over her husband's residuary estate disposes of plaintiff's arguments on this question. Remainder interests were created at Ben Snyder's death, but until Jessie Snyder's death, which was the taxable event, she had the power to let the remainder interests ripen or to make some other disposition of the property, thereby destroying the remainder interests. The nature of the estate tax was set forth in the case of Fernandez v. Wiener, 326 U.S. 340, 353, 66 S.Ct. 178, 90 L.Ed. 116, and the constitutionality of the application of the tax to the taking of possession or enjoyment generated by a death after the statute's enactment has been upheld. Fernandez v. Wiener, supra; United States v. Jacobs, 306 U.S. 363, 369, 59 S.Ct. 551, 83 L.Ed. 763; Saltonstall v. Saltonstall, 276 U.S. 260, 271, 48 S.Ct. 225, 72 L.Ed. 565. See also, Commissioner of Internal Revenue v. Estate of Church, 335 U.S. 632, 648, 69 S.Ct. 322, 93 L.Ed. 288. Nor is this a case where a testator's reasonable expectations were disappointed by a change in the law after his death, since it appears that the same result would have been reached under the law in effect at Ben Snyder's death because of Mrs. Snyder's power to appoint to persons outside the categories specified in Section 811(f) of the 1939 Internal Revenue Code, 53 Stat. 122, as amended by Section 403 of the Revenue Act of 1942, c. 619, 56 Stat. 798.

An appropriate order is this day entered.