321 F.2d 79
 Jane G. PIATT and Charles E. Hagyard, Co-Executors of the Estate of Thomas Carr Piatt, Deceased, Plaintiffs-Appellants,
v.
William M. GRAY, Former District Director of Internal Revenue, Defendant-Appellee.
 No. 14870.
 United States Court of Appeals Sixth Circuit.
 July 8, 1963.
 
 1
 Gladney Harville, Lexington, Ky., for appellants, Stoll, Keenon & Park, Lexington, Ky., on the brief.
 
 
 2
 Crombie J. D. Garrett, Dept. of Justice, Washington, D. C., for appellee, Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, Attys., Dept. of Justice, Washington, D. C., William E. Scent, U. S. Atty., Louisville, Ky., on the brief.
 
 
 3
 Before MILLER, Circuit Judge, and McNAMEE and BOYD, District Judges.
 
 
 4
 McNAMEE, District Judge.
 
 
 5
 This appeal challenges the correctness of the judgment of the District Court in disallowing a marital deduction for an interest passing under the will of Thomas Carr Piatt to his widow, Jane G. Piatt. Thomas Carr Piatt died at his residence in Fayette County, Kentucky on November 14, 1953. His will was admitted to probate on November 23, 1953. Item III of the will gives rise to this controversy, and, in pertinent part, provides:
 
 
 6
 "All of the rest and residue of my personal estate consisting of my personal property of any nature or description whatsoever after the payment of debts and these specific bequests above set out, I give and bequeath the same to my beloved wife, Jane, for and during her natural life. She shall have the power, right and authority whenever, in her opinion, it shall be necessary for her maintenance, comfort or well-being to expend all or any part of the principal of my said personal property without being required to account therefor, and she shall have the further right, power and authority to sell, lease, encumber or otherwise dispose of any and all items of personal property belonging to me and to give any purchaser a good fee simple title thereto.
 
 
 7
 "Upon the death of my beloved wife, Jane, the remainder of my personal estate I give and bequeath to my sister, Nancy Piatt Young, in trust for her life."
 
 
 8
 with further provision that upon the death of Nancy Piatt Young the property shall pass to her children.
 
 
 9
 The District Court's disallowance of the claim for marital deduction was on the ground that the surviving spouse lacked the power to make an independent testamentary disposition of the unconsumed portion of the principal of the estate withdrawn by her. The appellee, who of course prevailed in the court below, agrees with the result reached by the District Court but disagrees with that court's determination that to qualify for a marital deduction the widow must have the power to make a testamentary disposition of the property. Appellee asserts, however, that the district court's decision is sustainable on other grounds. It is fundamental that — "[I]f the decision below is correct, it must be affirmed, although the lower court relied upon a wrong ground or gave a wrong reason." Helvering v. Gowran, 302 U.S. 238, 245, 58 S.Ct. 154, 158, 82 L.Ed. 224 and cases cited therein.
 
 
 10
 We are called upon to decide (A) whether the terms of Item III of the testator's will meet the requirements of Section 812(e) of the Internal Revenue Act so as to warrant the allowance of the marital deduction; and (B) to determine the specific legal interest or right created by Item III of the will under the law of Kentucky.
 
 
 11
 (A)
 
 
 12
 In the opinion of the appellants the bequest to the widow of the life estate in the testator's personal property with the concomitant powers therein conferred is the equivalent of a life estate with the general power of appointment under Section 812(e) (1) (F), as amended by Section 93 of the Technical Amendments Act of 1958. In support of the foregoing contention appellants rely heavily on the legislative history of Section 93, particularly on House Report No. 1027 of the House Committee on Ways and Means which accompanied H.R. 8881. Appellants place special emphasis on the following language of the Report:
 
 
 13
 "For example, if the surviving spouse has, in addition to a life interest, the unrestricted right, in her sole discretion, to invade and use the property generally for her comfort, happiness and well being, such a power would meet the test prescribed in subsection (a) even though there is no separately stated power to dispose of the property. These broad powers in the surviving spouse to use, consume, or invade give the spouse an interest equivalent to a general power of appointment, which makes the property includible in the spouse's gross estate upon death. (Emphasis added.) 85th Congress, 1st Session, House of Representatives, Report No. 1027, August 7, 1957, pp. 1, 3."
 
 
 14
 Appellants cite and rely upon Lincoln Rochester Trust Co., Adm'r v. United States, 188 F.Supp. 839 (W.D.N.Y.). In that case the district court relied upon and quoted at length from Report No. 1027. However, the judgment of the district court was reversed in United States v. Lincoln Rochester Trust Co., 297 F.2d 891 (C.A.2) and, as noted by the Court of Appeals, H.R. 8881 never became law. It was passed by the House, referred to the Senate Finance Committee and apparently pigeon-holed there. In Bill form, the Technical Amendments Act was H.R. 8381, which was not associated with House Report 1027. In its opinion in the Lincoln Rochester Trust case, the appellate court said, inter alia:
 
 
 15
 "The language referred to in this report relied upon by the district court was not included in the act as finally adopted. No reliance can therefore be placed upon this portion of the report in interpreting the act."
 
 
 16
 It is apparent, therefore, that the appellants' reliance upon the district court's decision in Lincoln Rochester Trust and upon House Report 1027 was misplaced.
 
 
 17
 The cases upon which appellants rely in support of their claim for the allowance of a marital deduction are distinguishable as involving bequests which granted to the surviving spouse in those cases powers of disposition of much broader scope than those granted to the widow in the case at bar. See Boyd v. Gray, D.C., 175 F.Supp. 57; Stallworth's Estate v. Commissioner, 5 Cir., 260 F.2d 760; McGehee v. Commissioner, 5 Cir., 260 F.2d 818; Hoffman v. McGinnes, 3 Cir., 277 F.2d 598. In all of the last cited cases the courts held that the widow had unlimited power to invade the corpus which was exercisable by her alone and in all events. Here the widow's power was exercisable by her alone but it was not unlimited or exercisable in all events.
 
 
 18
 As amended, paragraph 1(F) is applicable to estates of decedents dying after April 1, 1948 and before August 17, 1954. Section 93(b) Technical Amendments Act of 1958, P.L. 85-866, 72 Stat. 1606. The decedent in this case died November 14, 1953 and paragraph 1(F) as amended is applicable to his estate. In 1958 that paragraph was amended in two respects. It was made applicable to legal estates as well as to life estates and trusts and also made applicable to that portion of an interest in respect of which a surviving spouse had a power of appointment that would qualify for the marital deduction whereas before the amendment the spouse was required to show a power of appointment over the entire estate. But no change was made in the nature of the required power of appointment. The surviving spouse is still required to have a power to appoint exercisable either in her own favor or in favor of her estate and the power must be exercisable by her alone and in all events. See In Estate of Comer v. Commissioner, 31 T.C. 1193, 1197. Under her husband's will Mrs. Piatt received a legal life estate in the residue of his personal property with remainder over to the husband's sister. The surviving widow was given the right to expend all or any part of such personal property whenever in her opinion "it shall be necessary for her maintenance, comfort or well being without being required to account therefor," and the further right to sell, lease, encumber or otherwise dispose of any and all items of personal property and to give any purchaser a good fee simple title thereto. The power of appointment requirement referred to in Section (1) (F) which must be exercised by the surviving spouse alone and in all events is defined variously in the Treasury Regulations as:
 
 
 19
 "A power so to appoint fully exercisable in her own favor at any time following the decedent's death (as for example an unlimited power to invade). Regulation 105, Sec. 81.47 (a) (C) (7) (1) (a) * * *.
 
 
 20
 or
 
 
 21
 "(ii) * * * The power of the surviving spouse must be a power to appoint the entire estate or a specific portion of it as unqualified owner * * * or to appoint the entire interest or a specific portion of it as a part of her estate * * * that is in effect to dispose of it to whomever she pleases."
 
 
 22
 Regulation 105, Sec. 81.47(a) (C) (7) (iii) enumerates the conditions under which the power is not exercisable in all events. In pertinent part this subsection provides:
 
 
 23
 "Further, a power is not `exercisable in all events' if it may be exercised for a limited purpose only * * *. Likewise, if there are any restrictions, either by the terms of the instrument or under applicable local law, on the exercise of a power to consume property (whether or not held in trust) for the benefit of the spouse, the power is not exercisable in all events. Thus, if a power of invasion is exercisable only for the spouse's support, or only for her limited use, the power is not exercisable in all events. In order for a power of invasion to be exercisable in all events, the surviving spouse must have the unrestricted power exercisable at any time during her life to use all or any part of the property subject to the power, and to dispose of it in any manner, including the power to dispose of it by gift (whether or not she has power to dispose of it by will)."
 
 
 24
 It requires no unusual powers of discernment to perceive that the relevant statutory provisions and Treasury Regulations applicable to Item III of the testator's will demonstrate clearly that absent local law compelling a contrary conclusion, the surviving spouse did not possess such an unlimited power to invade the corpus of the estate that she is able to appoint herself in all events as an unqualified owner. Nor does she possess the power to dispose of the property by gift.
 
 
 25
 (B)
 
 
 26
 The specific legal interest created by the testator is dependent upon the law of the local jurisdiction. Helvering v. Stuart, 317 U.S. 154, 63 S.Ct. 140, 87 L.Ed. 154; Morgan v. Commissioner, 309 U.S. 78, 60 S.Ct. 424, 84 L.Ed. 585.
 
 
 27
 Appellants cite and rely upon cases decided under the law of Kentucky in which, as they contend, language similar to the terms of the Piatt will was construed as conferring upon the surviving spouse the power to appoint the corpus to herself or to her estate. At least three of such cases, however, are not fairly comparable to the case at bar. In Boyd v. Gray, D.C., 175 F.Supp. 57, 60, the bequest to the widow was of "all of the residue of my property * * * to be used, enjoyed and disposed of by her in any way she may choose." (See also Boyd v. Gray, 162 F.Supp. 307) In Moore v. Morris, Ky., 258 S.W.2d 908, the widow was granted the power, inter alia, "* * * to sell and dispose of any of said property during her lifetime and to use the proceeds as she may see fit." In Snyder v. United States, D.C., 203 F.Supp. 195, the bequest to the widow was of "all the rest and residue of my estate * * * for and during her life with power of disposition over both the principal thereof and the income received therefrom, in such manner as she may see fit." The unfettered powers of disposition bestowed upon the surviving spouses in the above cited cases is in marked contrast to the limited power of disposition conferred upon the widow in the case at bar. Mrs. Piatt did not possess the power to dispose of the property as she might see fit. She was empowered to dispose of the property only when in her opinion it was necessary for her maintenance, comfort or well-being to do so. Despite the fact that she was not required to account to any one, it was expected that the widow would exercise her discretion honestly.
 
 
 28
 Appellants also cite and rely upon Scott v. Scott, Ex'rs, 65 Ky. (2 Bush. 147) (decided 1867); Hosman v. Willett, 32 Ky.L.Rep. 906, 107 S.W. 334, (decided 1908); Lanciscus v. Louisville Trust Co., 201 Ky. 222, 256 S.W. 424 (decided 1924). These cases are among the older Kentucky cases involving the construction of wills. Appellee aptly summarizes the Scott case as follows:
 
 
 29
 "For while some of the language in that case may lend the taxpayer initial comfort, the penultimate paragraph of the opinion therein makes it clear that an attempted gift of the corpus of the life estate was fraudulent as to the remaindermen."
 
 
 30
 In Hosman v. Willett, supra, the court upheld the right of a life tenant to sell property for her support as she was authorized to do by the testator's will even though at the time the sale was made she was married to a man who provided bountifully for her support. This case is an extreme example of judicial adherence to the strict letter of a will under radically changed conditions. However, the life tenant's power of sale was limited to the necessity for her support as she might determine. She did not possess unlimited power of disposition.
 
 
 31
 In Lanciscus v. Louisville Trust Co., the pertinent clause of the will provides in part:
 
 
 32
 "All the rest and residue of my estate, real, personal, and mixed and wheresoever situated, I give, devise and bequeath to my husband, James Herbert Bartlett * * * for and during his lifetime, but with power in him to use and dispose of, during his lifetime, for his support, maintenance, comfort and pleasure, all or any part of said rest and residue * * *.
 
 
 33
 "No one shall be permitted to question his disposition of said estate, or any part thereof."
 
 
 34
 There was a remainder over after the death of the surviving spouse to the Louisville Trust Company in trust for the use and benefit of the testator's nephew. The above quoted language is somewhat similar to but not the same as the language of the will of the case at bar. The word "pleasure" and the phrase "[n]o one shall be permitted to question his disposition of said estate, or any part thereof" enlarged substantially the powers of disposition of the surviving spouse in the cited case. In that case the lower court held that the surviving spouse "* * * had the unlimited right during his lifetime to spend, use, and dispose of for his pleasure as much of the property given him as he saw proper, even to all of it." Affirming the lower court, the Court of Appeals of Kentucky said, inter alia:
 
 
 35
 "Aside from the express purposes for which the wife devised her property to her husband, and, as it would seem, to put beyond all question his right to dispose of the corpus of the property in any manner he saw proper during his lifetime, she said: `No one shall be permitted to question his disposition of said estate or any part thereof.' That, and other language found in the will, clearly differentiates this case from the many cited ones in brief of the guardian ad litem to the effect that an ordinary life tenant of either real or personal property, with no enlargement of his powers as such, may not dispose of the corpus of the property for any other purpose except those named in his title paper."
 
 
 36
 Thus, language found in Lanciscus, not appearing in Piatt, is accountable in large part for the court's interpretation of the will in the cited case which gave to the surviving spouse unlimited powers of disposition.
 
 
 37
 Among the Kentucky cases cited by the appellee are Evans v. Leer et al., 232 Ky. 358, 23 S.W.2d 553 (1930); Maynard v. Raines, 240 Ky. 614, 42 S.W.2d 873 (1931); Collings v. Collings' Ex'rs, Ky., 260 S.W.2d 935 (1953); St. Joseph Hospital, Lexington et al. v. Dwertman, Ky., 268 S.W.2d 646 (1954).
 
 
 38
 In Evans v. Leer, supra, Item 3 of the will provided:
 
 
 39
 "Third: All the remainder of my estate, of every kind, real, personal and mixed, after the payment of my debts and the above bequests, I will to my beloved wife, Nannie B. Evans, for her life, with full right to use, consume and dispose of same as she sees fit, both as to income and principal as long as she lives, except that she may not dispose of same by will."
 
 
 40
 For the recited consideration of love and affection, the wife conveyed residence property of the estate to her niece with remainder to the niece's daughter. In an action by the devisees under the will the court set the deed aside. The court relied in part upon the earlier and analagous case of Embry's Ex'x v. Embry's, Devisees, Ky., 102 S.W. 239. Construing the Evans will, the court said:
 
 
 41
 "Though the main purpose of the will was to make suitable provision for his wife, and to this end she was given full power during her lifetime to use, consume, and dispose of the entire estate, it must not be overlooked that the testator intended to provide for his nieces, nephews, and others out of whatever was left at the death of his wife. So fixed was his purpose in this respect that he denied to his wife the right to dispose of the property by will. It is not perceived why she should have been denied this power if it was the testator's purpose to confer on her the power while she lived to give the property away, and thus leave nothing on which the devise over might operate. We are therefore constrained to agree with the chancellor that Mrs. Evans took a life estate with full power to use, consume, and dispose of the entire property for her own use and benefit, but with no power to give the property away."
 
 
 42
 In Maynard v. Raines et al., supra, it was held by way of dictum that the life tenant given power of sale for her support would not be authorized to give the property away. Standing alone, Collings v. Collings, supra, would be of dubious value as an aid to the construction of the Piatt will. However, when considered with the later case of St. Joseph Hospital, Lexington et al. v. Dwertman, it becomes a significant precedent. The pertinent provisions of the will in the Dwertman case provide:
 
 
 43
 "I give, devise, bequeath, my estate, real, personal and mixed, wherever it may be found, and of whatever it may consist, jointly to my wife, Louise Harting, as long as she remains my widow, and my daughter, Mary Jane Harting.
 
 
 44
 * * * * * *
 
 
 45
 "In case of the death of either my wife or daughter the estate of every description, will go to the one alive.
 
 
 46
 * * * * * *
 
 
 47
 "I want my wife and daughter, during their lifetime to enjoy the full benefit of my estate."
 
 
 48
 Then followed bequest of a contingent remainder to charitable institutions on the death of wife and daughter without children surviving daughter. In summarizing its reasons for the decision reached, the court observed that the interpretation of the will by the court below holding that the life tenants had an unlimited right of disposition except by will was contrary to the rule adopted in Collings v. Collings, which rule the Court of Appeals considered applicable in the case under consideration. The Court of Appeals then adopted the limitations upon the right of disposition appearing in the following quotation from Collings:
 
 
 49
 "Inherent in the will is the plain meaning that there was bestowed upon the widow an implied power to encroach upon the corpus of the estate during her lifetime. The testator undoubtedly intended that his widow should have a free hand in the use and management of his property and he meant, we believe, for her to have this use and management untrammelled by court proceedings or other interference. In short, we are of the opinion and we hold that it was the testator's intention that his widow should possess all right as to the use and enjoyment of the devised estate during her natural life; nevertheless, she may not willfully waste it, nor give it away, nor dispose of it by will." (Our italics.) (P. 937) No definite set of principles or guide lines to aid in construction of wills emerge from an examination of the cases cited above. A few of the cases shed light upon the issue to be determined but by and large the Court must rely upon its own interpretation of the language of the will in controversy. To ascertain the intention of the testator from the language used by him is still the cardinal rule of construction. Hanks v. McDanell, 307 Ky. 243, 210 S.W.2d 784, 17 A.L.R.2d 1. Piatt bequeathed the residue of his personal property to his wife for her natural life with power "whenever in her opinion it shall be necessary for her maintenance, comfort or well-being to expend all or any part of the principal without being required to account therefor together with the further right and power to sell, encumber or otherwise dispose of any and all items of personal property belonging to me and to give any purchaser a good fee simple title thereto." The power of disposition is linked to the power to expend and obviously was designed to enable the surviving spouse to implement the power to use and consume that portion of the personal estate which she considered necessary for her maintenance, comfort or well-being. She was not authorized to dispose of the property "as she may see fit" or "as she may choose" or by words of similar import. She was authorized to give a good title to "any purchaser" but was not granted authority to give good title to a donee. Having reserved and exercised the right to dispose of the property by will, it is unreasonable to assume that the testator would intend that his widow could give the property away. A gift of property by the surviving spouse would have been a fraud on the testator and upon his sister who was entitled to receive the remainder of the property after Mrs. Piatt's death. Compare: Evans v. Leer et al., supra. The intention of the testator in the case at bar may well be epitomized by paraphrasing Item 3 of the will in St. Joseph Hospital, Lexington v. Dwertman, supra, thus — I want my wife during her lifetime to enjoy the full benefit of my estate — and it must be held here, as it was in the last cited case, that the surviving spouse may not waste the property nor give it away nor dispose of it by will.
 
 
 50
 Marital deductions have been denied in numerous cases from jurisdictions outside Kentucky where the facts were similar to those at bar, of which the following are representative: Estate of Semmes v. Commissioner, 288 F.2d 664 (C.A. 6th); In re Tarver's Estate v. C. I. R., 255 F.2d 913 (C.A.4th); Commissioner v. Ellis' Estate, 252 F.2d 109 (C.A.3rd); May's Estate v. Commissioner, 283 F. 2d 853 (C.A.2d); United States v. Lincoln Rochester Trust Co., 297 F.2d 891 (C.A.2d), cert. den. 369 U.S. 887, 82 S. Ct. 1160, 8 L.Ed.2d 287.
 
 
 51
 For the reasons hereinabove assigned, the judgment of the District Court is affirmed.