# Kirkpatrick's Estate.

*Wills—Construction—Life estate—Death in lifetime of testator —Precedents—Intention.*

1. Precedents are of little value in the construction of wills, because, when used under different circumstances, and with different context, the same words may express different intentions.

2. Where the actual intent of the testator can be fairly gathered from the words used, the fact that another testator has employed like words with a different meaning is of no avail.

3. In determining whether a testator intended to give a fee or a life estate, all the words used by him should be taken into account, and if the intent to restrict the gift is clear, it must be given effect.

4. The rule of construction whereby a devise over in event of the death of first takers, is understood to mean death occurring in the lifetime of the testator, never applies where the first takers referred to are treated as living at a period subsequent to the death of the testator.

5. Where a testatrix leaving a son and daughter as her sole heirs at law directs that she wants all of her estate given to the son and daughter, equally divided between them, and that "at the death of either, the money to go to the remaining child unless my son should marry and have children then his part to go to his family, if they both die without children" or the son remains single, then "it is for them to decide which charity shall have it," naming two charities, and by other parts of the will she directs the daughter to give away her clothing, and both legatees to pay a legacy of an amount named to their aunt for life, the two children take a life estate and not a fee.

6. The will indicated that testatrix intended to provide for what should happen to her estate on the death of her children after her own decease, and not merely during her life.

7. In such case it is proper for the court to direct security to be entered by the life tenants, to protect remaindermen; but the court need not, in the proceeding before it, pass upon the question as to who the remaindermen are, or their interests.

Argued March 24, 1924. Appeals, Nos. 248 and 249, Jan. T., 1924, by Helen A. K. Cook and H. Bruce Kirkpatrick, legatees, from decree of O. C. Phila. Co., April T., 1923, No. 1514, dismissing exceptions to adjudication, in estate of Clara Kirkpatrick, deceased. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Exceptions to adjudication of HENDERSON, J.

The opinion of the Supreme Court states the facts.

Exceptions dismissed in opinion by LAMORELLE, P. J.

Helen A. K. Cook and R. Bruce Kirkpatrick, legatees, appealed.

*Errors assigned* were, inter alia, decrees, quoting them.

*W. Horace Hepburn,* for appellant, cited: Boyle v. Boyle, 152 Pa. 108; Second Reformed Presbyterian Church v. Disbrow, 52 Pa. 219; Dillin v. Wright, 73 Pa. 177; Field's Est., 266 Pa. 474; Blair v. Oliver, 267 Pa. 434; Stark's Est., 264 Pa. 232; Richards v. Bentz, 212 Pa. 93; Hartley v. Hartley, 265 Pa. 115; Biddle's Est., 28 Pa. 59.

*Fred Taylor Pusey,* with him *Wendell P. Bowman,* for appellee, cited: Sheets's App., 52 Pa. 257; Stoner v. Wunderlich, 198 Pa. 158.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, April 21, 1924:

On the adjudication of the account of the executors of the estate of Clara Kirkpatrick, deceased, the Orphans' Court of Philadelphia County held that her two children, hereinafter referred to as the "original legatees" or "the first takers," had but life estates under their mother's will, and entered a decree making awards accordingly. They claim to possess estates of greater quantity; hence this appeal.

Testatrix died July 21, 1922, leaving as her sole heirs at law two children, R. Bruce Kirkpatrick and Helen A. K. Cook; she made sundry specific bequests to them of her personal jewelry, and authorized the daughter to "give away" her clothing as she might please; then she directed these legatees to pay to their aunt, Anna Bender, $300 in cash, "within a month after my death," and to give her "as long as she lives," $30 a month, "each [child] to pay half"; after which the will reads as follows: "All of my Estate I want given to R. Bruce Kirkpatrick & Helen A. K. Cook equally divided between R. Bruce Kirkpatrick and Helen A. K. Cook. At the death of either the money to go to the remaining child unless my son should marry & have children then his part to

go to his family—If they both die without children or
R. B. Kirkpatrick remains single. It is for them to de-
cide which charity shall have—I prefer the Jefferson
Hospital &—the S. P. C. A., 922 N. Broad St. of which
I am a member prefer that of all others & want it to have
most of the money."

Clara Kirkpatrick was sixty-four years of age at the
time of her death; she possessed real and personal prop-
erty valued at about $114,000, all of which she had
derived from her husband, who, in his will, said he
trusted his widow to "look after and help" their two
children during life, and expressed the hope that, at her
death, she would "leave to them whatever estate she has
coming to her from me." Mrs. Kirkpatrick's will was
written by herself, without the assistance of counsel, and
at that time the daughter, Helen, was forty-two years
of age, and the son, R. Bruce, thirty-three. Although the
daughter had been married some years, she was without
children, and has had none since; the son was single at
the date of his mother's death and is still unmarried.

Appellants contend that the first clause of the above-
quoted paragraph of the will gives to them a fee in the
realty and an absolute estate in the personal property;
that, if what immediately follows this first clause be con-
strued to mean their deaths in the lifetime of the testa-
trix, and the final clause as a mere precatory expression,
then the absolute form of the gifts, as contained in the
initial words of the paragraph in question, is in no way
disturbed, and the estates or interests signified by those
words are made effective; they claim the will should be
so construed.

In Wettengel's Est., 278 Pa. 571, 573, this court re-
cently said: "We have repeatedly held that where the
dominant purpose shown by a devise is to vest a fee, this
estate cannot be stripped of its inherent attributes by
subsequent words indicating an intent so to do [citing
authorities; in addition to which see Williamson v.
Greene Imp. Co., 278 Pa. 358]; on the other hand, we

have probably as often held that, in finding the controlling intention, all the words used by testator should be taken into account, and, if the intent to restrict the gift is clear, it must be given effect [citing authorities; in addition to which see Deeter's Est., 280 Pa. 135; Orphans' Home, etc., v. Women's Pa. Society, etc., 279 Pa. 433; Field's Est., 266 Pa. 474]." Here, unless testatrix meant to provide for the death of the first takers in her own lifetime, and not at a period subsequent to her death, the intent to restrict the interests or estates given to her children is clear; therefore it is necessary to decide what she intended in regard to providing for the deaths of the latter.

"The rule of construction, whereby a devise over in event of the death of the first taker is understood to mean death occurring in the lifetime of the testator, applies only when the will itself shows no other period to which the words may, on a proper interpretation, be referred; and the rule is never applied where the first takers referred to are treated as living at a period subsequent to the death of testator. Here the whole will shows a contemplation by the testatrix that her children would survive her." This quotation from our opinion in Mebus's Est., 273 Pa. 505, 516, peculiarly fits the present situation; see also Deeter's Est., supra.

In order to verify the "contemplation" just referred to, we shall first confine our attention to the above-quoted paragraph from decedent's will. It can be seen, even from this portion of the writing alone, that testatrix did not, as contended by appellants, intend simply to provide for the possibility of the death of the original legatees, or first takers, during her own life, and in such contingency to substitute others in their places (as in Edelman's Est., 276 Pa. 503, 506); on the contrary, she used language indicating that she meant to provide for the death of such legatees at any time. She refers to the possible marriage of her son, to his having children, and to the property going "to his family," also, by in-

ference, to the possibility of her daughter leaving children.    When these amplifying expressions are taken together, and considered in the light of the fact that testatrix evidently intended equality between her two children so far as their individual enjoyment of her estate is concerned, they are indicative of an intention to provide for the passing of that estate on the deaths of such original legatees at any time: Jessup v. Smuck, 16 Pa. 327, 341; Field's Est., 266 Pa. 474, 477.    Then, again, as is well said by the court below, the provision at the end of the paragraph now under consideration, giving the original legatees the right to "decide which charity shall have" the estate in case of their deaths "without children," also "necessarily visualizes the [first takers] as living after the death of their mother......
[for this provision] cannot mean to refer to their death in her lifetime......[since] until her death, the will is not effective, [and hence] they [the original legatees] are in no position to determine anything with reference to the selection of the charities"; see the same thought in Deeter's Est., supra; also consult Blair v. Oliver, 267 Pa. 434, 437, 438.

The above indications, showing that testatrix intended to provide for what should happen to her estate on the death of her children after her own decease, and not merely during her life, are sustained by the will as a whole, wherein,—as may be seen by our detailed account of the document, at the beginning of this opinion,—she repeatedly instructs, or makes pointed references to, things to be done by the first takers (particularly as to giving away her clothing and the direction to pay $30 a month to their aunt), which taken altogether demonstrates that she contemplated the survival of her children after her own decease, and planned the will accordingly: as to the effect of such internal evidence, see Stoner v. Wunderlich, 198 Pa. 158, 164.

So far as the precise effect of the will is concerned, we agree with the learned court below that, at the present

time, it is necessary to determine only that it gives life estates to appellants with interests in remainder to possible, but as yet unborn, grandchildren of testatrix; these latter interests, at least, call for protection. It is not necessary to determine either the exact meaning or effect of testatrix's mention of her son's "family" (Wettengel's Est., 278 Pa. 571, 575); or of the privilege conferred on the original legatees to decide as to possible ultimate charities. We have noted these features merely to assist us in arriving at testatrix's intention concerning the quantity of the estates given to her son and daughter; or, more directly, as aids in determining the key to that problem, which is found in the answer to the question, Did she intend to provide only for the passing of the interests given to her children in case of their deaths in her own lifetime, as contended by appellants, or on their deaths generally, as contended by the other side? With this point decided against appellants, their case falls.

As to the many authorities cited by counsel, we need only say, quoting from Long's Est., 270 Pa. 480, 487, that "precedents are of little value in the construction of wills, because, when used under different circumstances and with different contexts, the same words may express different intentions. When the intent of the testator, and by that is meant his actual intent, can be fairly gathered from his words, the fact that another testator has used the same words with a different meaning is of no avail. Neither precedents nor rules of construction can override the testator's expressed intent; and this, in the present case, the court below correctly found from the will." The authorities cited in the present opinion are used for the sake of the language quoted therefrom, or they are mentioned by way of illustration rather than as precedents.

Finally, the order directing the entry of security by the life tenants, to protect remaindermen, is in accord with section 23 of the Fiduciary Act of June 7, 1917, P.

L. 447, and established practice: Wettengel's Est., supra, 573.

The decree appealed from, including the order just mentioned, is affirmed at cost of appellants.