ESTATE OF JOSEPHINE R. LANIGAN, A.K.A. JOSEPHINE RANCK LANIGAN, DECEASED, WILLIAM NEALE LANIGAN, EXECUTOR, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 964–64. Filed December 15, 1965.

---

*John F. Kennedy*, for the petitioner.

*Edward L. Newberger*, for the respondent.

SIMPSON, *Judge:* The respondent determined a deficiency in estate tax in the amount of $106,453.32. The ultimate issue in this case is whether Josephine R. Lanigan possessed a general power of appointment sufficient to cause the corpus of her father's testamentary trust to be includable in her gross estate under section 2041 of the Internal Revenue Code of 1954.[1]

FINDINGS OF FACT

The facts were fully stipulated and these facts and exhibits incorporated therein are so found.

Petitioner is the duly qualified executor of the Estate of Josephine R. Lanigan, who died on January 19, 1960, a resident of Montgomery County, Pa. The U.S. estate tax return was filed with the district director of internal revenue, Philadelphia, Pa., on January 31, 1961.

The respondent has determined an estate tax deficiency of $106,-453.32. The statutory notice of deficiency, dated February 11, 1964, asserts in explanation:

(a) It is determined that the testamentary trust created under the will of Joseph A. Ranck is includible in decedent's estate at its fair market value of $459,045.10 on the ground that the decedent possessed a general power of appointment over the trust within the provisions of section 2041 of the Internal Revenue Code of 1954.

The parties agree that counsel fees and other expenses in connection with this case, to the extent allowable by Pennsylvania law, shall be allowed as a deduction in assessing the estate tax due. Accordingly, the final deficiency, if any, is not ascertainable without further computation.

Joseph A. Ranck died testate on January 11, 1951. His will, dated May 13, 1938, was republished by codicil on March 16, 1939, and July 3, 1945. He was survived by one child, the decedent in this case. The will created a trust in which his wife and daughter were given successive life estates. At his daughter's death, the trust was to be divided into as many shares as she had children and distributed to them at age 21. She was survived by one child, not yet 21, William Neale Lanigan, Jr. He was adopted on February 5, 1946, after the last codicil to Ranck's will.

Article Seventh of Ranck's will provided:

My trustees may distribute and pay out portions of the principal hereof to or for the use or benefit of my wife, or my daughter after the death of my wife, at such times, in such amounts, and for such purposes as my said trustees in their unrestricted discretion may deem advisable.

---

[1] All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated.

His will contained additional provisions such as a spendthrift clause applicable to all beneficiaries, a gift over in the event his daughter left no surviving issue, and a provision that his wife should serve as cotrustee with the Montgomery National Bank of Norristown. Article Sixth, section 4, directed the trustee to pay the income to his daughter's children for their "support, education and maintenance, and/or care," or to accumulate same during their minority.

Since Ranck's wife predeceased him, his daughter immediately became life beneficiary of the trust. The Montgomery National Bank of Norristown became sole trustee upon his death.

In February 1954, the Montgomery National Bank merged with the Philadelphia National Bank. Pennsylvania law provides that in the event of such a merger, interested parties may apply for the appointment of a substituted fiduciary. Josephine Lanigan filed such a petition in March 1954. In addition, she requested her appointment as a cotrustee. Her request in the Orphans' Court was supported by the guardian *ad litem*. The Orphans' Court of Montgomery County granted the petition and, over the objection of the Philadelphia National Bank, this decree was sustained on appeal by the Supreme Court of Pennsylvania. *Ranck Estate*, 381 Pa. 332, 112 A. 2d 105 (1955). The Philadelphia National Bank argued in its brief that her appointment might create a substantial estate tax liability. The State Supreme Court, however, found that the appointment of both new trustees was within the sound discretion of the Orphans' Court. Although the bank's argument was noted by the court, it did not base its decision on, or attempt to determine, the Federal estate tax consequences of her appointment.

At the time of her death, decedent was both life beneficiary and cotrustee of the testamentary trust created by her father's will. The respondent took the position that the value of the residuary estate of Joseph A. Ranck was includable in his daugher's estate because she possessed a general power of appointment within the provisions of section 2041.

On March 21, 1963, over 3 years after the death of the daughter, the Montgomery County Bank & Trust Co. (formerly the Montgomery Norristown Bank & Trust Co.), surviving trustee of the Ranck residuary trust, filed a second and partial account with the Orphans' Court of Montgomery County. This account was filed 5 months after the confirmation of a preceding account and was done because of the pending tax question. The executor of the daughter's estate filed a claim against the Ranck estate requesting that $85,000 be set aside to insure payment of the tax on the Lanigan estate if any be found due.

The accountant petitioned the Orphans' Court for adjudication of several additional questions. A decision was requested for issues stated

substantially as follows: (1) Whether the decedent possessed a general power of appointment (the court was not requested to determine whether it was a general power as defined by section 2041); (2) whether the power in decedent to consume or invade principal for her own benefit was limited by an ascertainable standard; (3) whether the power to consume and invade principal was limited by an ascertainable standard relating to health, support, and/or maintenance; (4) whether the power to consume or invade principal was limited by her fiduciary capacity and her legal accountability therefor.

Counsel for the trustee of the Ranck trust, who was simultaneously counsel for the Lanigan estate, notified the Philadelphia regional counsel, Internal Revenue Service, by letter dated April 25, 1963, that a second and partial account of the trust was filed with the Orphans' Court of Montgomery County. He further stated that the court would be requested to determine the nature of the power possessed by Josephine Lanigan under Pennsylvania law.

Sidney Salkin, assistant U.S. attorney, delivered a memorandum of law entitled "Brief Amicus Curiae" to the Orphans' Court, but he did not enter an appearance and did not petition the court for permission to file the memorandum. The brief contended that the Orphans' Court had no jurisdiction and should not take jurisdiction of the case. The substantive law was not discussed.

Counsel for the surviving trustee of the Ranck trust filed a brief dealing with the substantive law. William Neale Lanigan, Jr., the sole remaining beneficiary, was represented by his guardian *ad litem*. The guardian *ad litem* filed no brief dealing with the nature of the power in question.

The only parties to enter an appearance in the Orphans' Court of Montgomery County, Pa., were the Montgomery County Bank & Trust Co., surviving substituted trustee, and Kirke Bryan, as guardian *ad litem* for William Lanigan, Jr. The only pleadings were the "Account and the Petition for Adjudication" which contained questions presented for the court's adjudication. No evidence was taken.

On February 7, 1964, the Orphans' Court handed down an adjudication. In its opinion, the court pointed out that it was passing on the question of whether or not a fund should be set aside in the Ranck estate to reimburse the Lanigan estate for Federal estate taxes.

After finding that the Orphans' Court had jurisdiction to determine the questions presented, the court went on to construe the Ranck will. It pointed out that the testator had directed that the consumption of the principal be limited to the "use and benefit" of the beneficiaries. In addition, the trust made provisions for the disposition of unconsumed principal. For these and other reasons, the court expressly concluded that Josephine Lanigan's power to pay

out principal was restricted to situations involving the "need, or care, maintenance or support of the life tenant." The court stated that the only issue for adjudication was whether the daughter's use of the power was limited by an ascertainable standard and that it was not dealing with another beneficiary who was not encumbered by a fiduciary duty. The Orphans' Court then ordered as follows:

Therefore, as it appears that a possible Federal Estate Tax liability exists in the Estate of Joseph A. Ranck, Deceased, the claim on behalf of the Estate of Josephine R. Lanigan, Deceased, that $85,000 be set aside to insure the payment thereof, or reimbursement therefor, is granted. In addition, there is hereby awarded to the Estate of Josephine R. Lanigan, Deceased, any share of Federal Estate Tax liability, together with interest thereon which may properly be found to be due after proper assessment and payment thereof.

The account is confirmed, and it is ordered and decreed that Montgomery County Bank and Trust Company, surviving substituted trustee, as aforesaid, forthwith pay the distributions herein awarded.

### ULTIMATE FINDINGS

It is further found that decedent possessed a general power of appointment created after October 21, 1942, over the corpus of the trust established under the will of Joseph A. Ranck, and that such power was not limited by an ascertainable standard relating to health, education, support, or maintenance of the decedent within the meaning of section 2041 (b) (1) (A).

### OPINION

The ultimate question in this case is whether the decedent, Josephine R. Lanigan, possessed such a general power of appointment over the corpus of the residuary trust established by her father's will as to cause the value of the trust to be includable in her estate for purposes of the Federal estate tax.

Section 2041 (a) (2) requires that the value of property subject to a general power of appointment created after 1942 be included in the decedent's gross estate. Section 2041 (b) (1) defines a "general power of appointment" as a power exercisable in favor of the decedent, his 2041 (b) (1) (A) provides as follows: estate, his creditors, or the creditors of his estate. However, section

(A) A power to consume, invade, or appropriate property for the benefit of the decedent which is limited by an ascertainable standard relating to the health, education, support, or maintenance of the decedent shall not be deemed a general power of appointment.

In this case, decedent was the life beneficiary of the trust and a trustee with power to "pay out portions of the principal" to herself as beneficiary. Thus, she possessed a general power as defined in section 2041 (b) (1), unless it was limited by an ascertainable standard within the meaning of section 2041 (b) (1) (A).

Petitioner begins his argument with the general rule that the existence and nature of property rights is determined under State law, but the taxability of that interest is determined under Federal law. *Morgan* v. *Commissioner*, 309 U.S. 78 (1940); *Blair* v. *Commissioner*, 300 U.S. 5 (1937); *Freuler* v. *Helvering*, 291 U.S. 35 (1934); *Estate of Wilhelmina L. Benjamin*, 44 T.C. 598 (1965). Therefore, we must examine Pennsylvania law to determine the nature and extent of decedent's power over the corpus of the trust.

At the outset of his argument on State law, petitioner calls our attention to a February 7, 1964, decision of the Orphans' Court of Montgomery County, Pa. That decision holds that the power under Joseph A. Ranck's will to pay out principal "at such times, in such amounts, and for such purposes as my said Trustees in their unrestricted discretion may deem advisable" is a limited power. According to that court, under Pennsylvania law, this power is "restricted to situations involving the need, or care, maintenance or support" of the deceased.

Petitioner argues that when Federal taxes turn on the nature of a property interest, an adjudication of that interest by a State court must be given effect in a Federal court unless the State proceeding was collusive. The respondent has countered that the State proceeding was nonadversary, contrary to State law, and instituted for the purpose of adversely affecting the Government's right to tax. In addition, respondent asserts that the State court lacked jurisdiction to adjudicate the matter because there was no real controversy.

We wholly agree with the petitioner's statement of the general rule that ordinarily the existence and nature of a property interest is determined under State law. Such a rule is sound in our Federal system, for it would be incongruous to have the Federal courts as a general practice determine property interests in a manner different than a State court. For example, in most cases it would be unfortunate to treat a person as having income for Federal purposes when, in fact, under State law he was not entitled to receive such income. Accordingly, a State decision adjudicating property rights is generally followed in a Federal court.

Although there is no disagreement with the general practice of looking to State law to determine a person's property interests, there has been much confusion and uncertainty as to when the Federal courts should disregard a decision by a State court adjudicating those interests. For a discussion of these decisions, see Sacks, "The Binding Effect of Nontax Litigation in State Courts," 21st Ann. N.Y.U. Tax Inst. 277 (1963).

Fortunately, in this case, we are not required to pass on the question of whether the decision by the Orphans' Court was collusive, whether

the proceeding was nonadversary, or whether under Pennsylvania law the Orphans' Court had jurisdiction to adjudicate the questions presented to it. We believe that the general practice of the Federal courts to follow a State court adjudication of property interests simply does not apply in this case. In so far as the Orphans' Court purported to determine the nature and extent of decedent's power of appointment over the trust, that decision had no effect under State law and should not, therefore, be considered as determining any property interests for purposes of Federal taxation. *Hight* v. *United States*, 256 F. 2d 795 (C.A. 2, 1958); *Third National Bank and Trust Co.* v. *United States*, 228 F. 2d 772 (C.A. 1, 1956); *United States* v. *Pierotti*, 154 F. 2d 758 (C.A. 9, 1946).

The proceeding in the Orphans' Court was a second and partial account filed by the present trustees. In addition to the accounting and a request that sums from the Ranck estate be set aside for taxes on the Lanigan estate, the court was asked to rule on several questions relating to the nature of the power possessed by decedent. However, when the adjudication was requested, the decedent had already been dead for more than 3 years and had never exercised the power. Consequently, the court's answers to these questions could not have an effect on her rights and obligations under Pennsylvania law. Since she had not exercised the power, there was no question of approving or disapproving retroactively what she had done, and since she was already dead at the time of the decision, there was no question of defining the scope of her rights to future invasions of the corpus of the trust. Likewise, since the decision dealt with the decedent's power, and no similar power existed in favor of the remaining beneficiary, the decision could not affect the rights or duties of anyone under Pennsylvania law. Obviously, the decision by the Orphans' Court, if given effect by the Federal courts, would change the amount of money in trust for the remaining beneficiary. But this results from the Federal tax consequences and not from State property law or a State court's determination of the beneficiary's property interest.

In *Dauphin Deposit Trust Co.* v. *McGinnes*, 324 F. 2d 458 (C.A. 3, 1963), the Third Circuit was confronted with an analogous situation, and there said that an anomalous situation would result if a decree not binding on the parties were to be binding on the United States in a subsequent tax proceeding. That case required the court to construe provisions of a testamentary trust distributing corpus. The State court had impliedly construed a similar provision of the same will. However, the decision of the State court related to the distribution of the estate and not the distribution of the trust. The Third Circuit held that since the State court decision did not affect the property interests involved in the tax litigation, it would not be given effect.

A similar result was reached by the First Circuit in *Third National Bank and Trust Co.* v. *United States*, 228 F. 2d 772 (C.A. 1, 1956). The issue was whether a charitable remainder had an ascertainable value in view of the trustee's power to invade corpus for the life beneficiary. Without exercising or proposing to exercise that power, the trustee petitioned a Massachusetts court for instructions. The State court set forth some criteria which would govern the exercise of that power under State law. In searching for an ascertainable standard, the First Circuit felt that it was not bound by the State decree because it did not actually establish anyone's property rights.

In *Newman* v. *Commissioner*, 222 F. 2d 131 (C.A. 9, 1955), affirming 12 T.C. 708 (1949), the argument was made that a State decree had found an oral trust to be irrevocable and, therefore, a completed gift when the trust was established. However, the State proceeding was instituted approximately 1 year after the trust had terminated according to its terms, and thus, the State court was not required to pass upon the revocability of the trust in order to establish the property interests of any of the parties. The language of the State decision declaring the trust irrevocable when created was meaningless and had no effect under State law. Therefore, the Ninth Circuit refused to follow the decision of the State court.

Similarly, in *Snyder* v. *United States*, 203 F. Supp. 195 (W.D. Ky. 1962), the court rejected a State decree as not applicable for determining includability under section 2041. Among other reasons, the court there found that questions concerning the nature and extent of the power to dispose of principal in the Federal tax sense were not before the State court.

In all of these cases, the Federal courts were asked to give effect to a decision by a State court which purported to establish property interests. Although the cases do not involve exactly the same factual situation as the case before us, they do demonstrate that State judgments must deal with property rights and have some effect under State law before they are binding in subsequent Federal tax litigation.

In arguing that the decision of the Orphans' Court must be followed in this proceeding, petitioner relies principally on four cases, *Gallagher* v. *Smith*, 223 F. 2d 218 (C.A. 3, 1955); *Darlington's Estate* v. *Commissioner*, 302 F. 2d 693 (C.A. 3, 1962), reversing 36 T.C. 599 (1961); *Estate of William A. Landers, Sr.*, 38 T.C. 828 (1962); and *Flitcroft* v. *Commissioner*, 328 F. 2d 449 (C.A. 9, 1964), reversing 39 T.C. 52 (1962).

In *Gallagher*, the taxpayer, along with 12 of her children, was the beneficiary of a trust created by her husband's will, but under the will its language was not clear as to whether she was entitled to receive all the income of the trust during her life or whether she was entitled to just one-thirteenth of such income. Five years after her husband's

death, when the trust was finally established, she executed a formal release of all but one-thirteenth of the income for past, present, and future years. An account of this trust was filed before the Orphans' Court incident to discharge of one cotrustee and notice thereof was sent to the Internal Revenue Service. The State court confirmed the account and awarded the income for distribution in equal thirteenths to the beneficiaries. The Commissioner, nevertheless, sought to tax the entire income thereof to the wife. She resisted this effort in the Federal District Court where it was found that plaintiff was entitled to the entire net income and that the decree of the Orphans' Court was not binding because the State proceedings were nonadversary. Notice to the Treasury, followed by the Government's failure to appear, did not change the character of the proceedings. *Gallagher* v. *Smith*, 119 F. Supp. 360, 362 (E.D. Pa. 1953).

On appeal, the Third Circuit acknowledged that a judgment obtained by collusion to defeat a Federal tax need not be given conclusive effect, and that the nonadversary character of a State suit is relevant evidence of such collusion. But the fact that all parties desire the same result does not itself vitiate the conclusive effect that State law gives to its own judgments. It is logical, said the court, that taxation based solely upon ownership of property should follow such a judgment. The test imposed was not whether the suit was adversary, but whether it was an adjudication of property rights binding upon the parties under State law and not obtained by collusion. The majority of the court interpreted the State court decision as holding that the taxpayer was not entitled to more than one-thirteenth of the income of the trust. Accordingly, it gave conclusive effect to the State judgment.

The other case from the Third Circuit relied upon by petitioner, *Darlington's Estate* v. *Commissioner*, *supra*, reaches a similar result. In that case, the Tax Court refused to give conclusive effect to a State ruling which directed that any benefit arising from an inheritance tax deduction must inure to the benefit of charitable beneficiaries. The State ruling directing the executors to take certain actions was rendered upon their request. The Tax Court stressed the fact that the proceeding was nonadversary and expressed belief that the residuary legatees would be unaffected by the decree. *Estate of Isaac G. Darlington*, 36 T.C. 599, 604 (1961).

On appeal, the Third Circuit reversed, holding that there was no indication of a collusive arrangement with respect to the State court decree. Significantly, the court further stated, at page 695, as follows:

We think it pretty clear that if anybody changes his mind concerning the result reached in the state adjudication he will have a bad time trying to avoid the effect of the Delaware County Orphans' Court's decision.

In other words, if any estate tax deduction be allowed, it will be disposed of in accordance with the State court ruling.

In *Flitcroft* v. *Commissioner*, *supra*, a State court entered a decree retroactively reforming certain trusts so as to carry out the settlors' original intention. Under the State law a trust was not irrevocable unless the trust instrument expressly so provided. Although the trusts involved in the *Flitcroft* case contained no such provision when they were established, the State court reformed them to include the provisions. In a contest over whether the settlors were taxable on the income of the trusts, the Tax Court held that it was not bound by the State decree because there was no reason for the State proceeding other than to affect the Federal income tax result and, therefore, the State decree was collusive. *Will Flitcroft*, 39 T.C. 52 (1962). The Court of Appeals for the Ninth Circuit reversed, holding that in a proceeding of this nature, some evidence of collusion must be shown.

In *Estate of William A. Landers, Sr.*, *supra*, this Court gave conclusive effect to a Georgia judgment construing a will. In that proceeding the wife was still living and her power to dispose of certain property was defined by the State court. The Tax Court stressed the fact that certain issues were resolved in her favor while others went against her in the tax sense. Accordingly, adverseness was established in the record and no finding of collusion was possible.

We believe that all of the cases relied upon by the petitioner are inapposite to the one at bar. In *Gallagher* the State judgment prevented surcharge of a trustee for his past actions, determined that certain types of distributions were permissible in the future, and limited the wife's income interest for all time. *First National Bank of Montgomery* v. *United States*, 176 F. Supp. 768 (M.D. Ala. 1959), affirmed per curiam 285 F. 2d 123 (C.A. 5, 1961). In *Flitcroft*, the effect of the judgment was to prevent the settlors from revoking the trust and to immunize the trustee from liability in the case of an attempted revocation. In *Darlington's Estate* a binding direction was issued which determined the allocation of any tax benefit, and no other allocation was legally possible under State law. In *Landers* the State court determined the nature of a widow's rights in specific property and the manner in which she could exercise them in the future. All of the State judgments involved had some operative effect in the jurisdiction where rendered, either approving past specific acts, or limiting future rights, or both. In these cases, the courts talked about whether or not the State court decision was collusive or nonadversary, but in all of them, the State court made a decision which affected someone's property interest. By contrast, the decision of the Orphans' Court

relating to Lanigan's power over the corpus of the trust could have no effect upon anyone's property interest under Pennsylvania law.

Having decided that the Orphans' Court opinion is not conclusive, we must still determine the nature and extent of decedent's power of appointment under State law. For this purpose, we look to the judgment of the Orphans' Court as evidence of that law.

In applying State law, this Court follows the tests stated in *Burleigh Estate*, 405 Pa. 373, 175 A. 2d 838 (1961), quoted in petitioners' brief as follows:

It is now hornbook law (1) that the testator's intent is the polestar and must prevail; and (2) that his intent must be gathered from the consideration of (a) all the language contained in the four corners of his will and (b) his scheme of distribution and (c) the circumstances surrounding him at the time he made his will and (d) the existing facts; and (3) that technical rules or canons of construction should be resorted to only if the language of the will is ambiguous or conflicting or the testator's intent is for any reason uncertain: * * *

The Court further agrees with the petitioner that each will is unique and precedents of little guidance. *Jackson's Estate*, 337 Pa. 561, 12 A. 2d 338 (1940); *Kirkpatrick's Estate*, 280 Pa. 306, 124 A. 474 (1924).

In determining that decedent's power of appointment was limited by an ascertainable standard, the Orphans' Court stressed the fact that provisions were made for alternate remaindermen following the death of both life tenants. It was suggested that this indicated Ranck's intention that a substantial unconsumed principal should remain intact. This Court attaches no such significance to the existence of gifts over following a life estate. Any sound estate plan would have considered the possibility of the life beneficiaries not consuming the entire corpus of the trust and would, therefore, dispose of the remainder in some manner.

The State court similarly stressed the fact that testator selected a corporate cotrustee. This action was equivocal and could have sprung from no more than a desire to obtain experienced trust management.

The State court also spoke of a limitation on the power to consume arising from the trustee's duty toward remaindermen, citing in that connection *Johnson Estate*, 359 Pa. 645, 59 A. 2d 877 (1948), and *O'Brien Estate*, 381 Pa. 322, 112 A. 2d 178 (1955). In *Johnson Estate*, the life beneficiary and trustee attempted to transfer property from a testamentary trust to a second trust which she created. In the second trust, the beneficiaries' interests differed in quantum from that in the testamentary trust she was bound to administer. Although the Pennsylvania Supreme Court in that case found that the trusetee's discretion was limited to action in accordance with the purpose of the testamentary trust, it does not follow that any trustee-beneficiary is limited to the standard specified by the Orphans' Court in this case.

In fact, the *Johnson Estate* case decides no more than that an alteration of the beneficiaries' interest, without any stated justification, is an abuse of discretion even where the trustee-beneficiary has a power to consume.

In *O'Brien Estate, supra*, the trustee was authorized to expend income and principal as he "may deem necessary and advisable." However, the language of that trust went on to state that these expenditures were "for the support and maintenance" of the beneficiaries. Other language of the trust specified that the trustee would be the sole judge of what part of corpus should be spent "for the support" of the beneficiaries. The words "support" and/or "maintenance" occurred five more times in that trust. The Supreme Court held that the trustee-beneficiary could not appoint the entire corpus to himself unless necessary and advisable for his maintenance and support. It was further held that the trustee did not have an absolute fee to the property as he claimed. That case cannot support the proposition that in the absence of such language as "support and maintenance," such a standard will be implied.

The Orphans' Court further suggested that since the fund was held in trust for "the use and benefit" of the beneficiaries, some sort of limitation is implied. This Court attaches no such significance to employment of these standard legal terms which appear in most every American trust.

Lastly, the opinion of the Orphans' Court asserts that substantial provisions for the disposition of unconsumed principal coupled with an expression that consumption of principal is limited to the use and benefit of beneficiaries is recognized by the Federal courts as a definite ascertainable standard. We cannot agree. In this connection, the State court relied upon *Commissioner* v. *Ellis' Estate*, 252 F. 2d 109 (C.A. 3, 1958), reversing 26 T.C. 694 (1956). In that case the Third Circuit was attempting to determine whether a beneficiary with power to consume the corpus possessed the equivalent of a fee simple. The question was whether the wife as beneficiary possessed a completely unlimited power which thus qualified for a marital deduction under the Internal Revenue Code of 1939. The Third Circuit found that the Pennsylvania rule requiring good faith in the exercise of a power of appointment and language permitting invasion of corpus if she should so "require" prevented the power from being unlimited. However, it is quite clear that a power may be limited so that it does not qualify for the marital deduction although it is not limited by an ascertainable standard relating to the health, education, support, or maintenance of the holder as required under section 2041(b)(1)(A). In addition, we perceive no language in *Ellis* which places importance on the terms "use and benefit" as suggested by the Orphans' Court.

The petitioner argues that a will should be construed so as to carry out the intent of the testator and that he could not have intended his daughter to have a general power since he did not name her as a trustee even though his wife predeceased him. However, we are not persuaded by this argument because his daughter did become trustee by operation of Pennsylvania law and possessed whatever powers the will conferred upon a trustee. Section 2041 requires the inclusion in gross estate of property over which decedent possessed certain powers, without regard to the manner in which these powers were acquired. Petitioner also suggests that the existence of a spendthrift clause indicates an intent to restrict the daughter's power. The existence of the clause, however, does not restrain an appointment of corpus to the beneficiary directly. In addition, it tells us little about the testator's intention regarding his daughter because it applies to the interests of all the beneficiaries, including remaindermen.

This Court has found no Pennsylvania cases on all fours with the instant will. Petitioner's brief, however, cites *Tyson's Estate*, 191 Pa. 218, 43 A. 131 (1899). That case held that a life estate coupled with a power to consume principal did not result in a completely unrestricted power. The life tenant was under a duty to exercise good faith in consuming the property for her own use.

Similarly, in *Rumsey's Estate*, 287 Pa. 448, 135 A. 119 (1926), the wife was both a trustee and life beneficiary. The will permitted her to consume "as much of the principal as she desires for her support and comfort." The court found that so long as she acted in good faith and did not deplete the estate merely for the purpose of defeating testator's intention, it would be slow to condemn expenditures as contrary to the power vested in her.

In *Powell's Estate*, 340 Pa. 404, 17 A. 2d 391 (1941), the wife possessed a life estate with power to "use and expend all of the income from said estate as she may desire." In addition, she was empowered to consume so much of the principal as she may find necessary for comfort and satisfactory support. In an action for an accounting, the court summarily dismissed any claim that the remaindermen were entitled to an accounting of the income under the language of the trust. In view of the difference in language, the court found some limitation on the consumption of principal although the wife was said to be the sole judge of what constituted comfortable and satisfactory support. Thus, it is apparent that Pennsylvania will give effect to broad language vesting wide discretion in a trustee-beneficiary. It is also apparent that the State will recognize and enforce differences in language setting standards for expenditure of income and principal.

In searching for the testator's intent, Pennsylvania will consider the circumstances surrounding the testator when the will was made. *Burleigh Estate*, 405 Pa. 373, 175 A. 2d 838 (1961). At that time, Ranck had no grandson, nor did he at the time of any subsequent republication. Thus, it is difficult to agree with the Orphans' Court that he intended to favor a nonexistent grandson by restricting the life beneficiary's power to invade. It is more likely that Ranck intended to benefit the life beneficiaries, whom he knew and loved, by granting a very broad power to enjoy the trust fully.

In deciding, as we do, that the power granted decedent in this case was not intended to be limited to health, education, support, and maintenance, this Court is impressed by the clear, unambiguous language of the will. In addition, we observe that if the remaindermen be minors, the trustee is empowered to pay over income for "their support, education and maintenance and/or care." Thus, the testator set a specific standard for expenditure of income. The omission of this language regulating consumption of principal by his daughter, coupled with a grant of "unrestricted discretion" in the trustee, is very strong evidence that the testator intended no like standard to govern her power.

Finally, our decision is supported by *Strite* v. *McGinnes*, 330 F. 2d 234 (C.A. 3, 1964), certiorari denied 379 U.S. 836 (1964), rehearing denied 379 U.S. 910 (1964). In that case, the sole life beneficiary and trustee held the power, as trustee, to appoint principal to herself "at any time necessary or advisable in order to provide for the reasonable needs and proper expenses or the benefit or comfort" of the beneficiary. The Third Circuit, after an extensive review of State law, concluded that neither the fact that the power was held as trustee, nor the Pennsylvania implied standard of good faith for the exercise of a power of appointment, created an ascertainable standard under section 2041(b)(1)(A).

The court there ascertained that Congress intended that the measure of control exercisable by the decedent be the determinant of taxability. We agree and, in the face of language purposefully granting that power to decedent in terms far more sweeping than in *Strite* v. *McGinnes*, *supra*, we must find that power to be so broad that it escapes the limitation of section 2041(b)(1)(A). Accordingly, the corpus of the trust created by the will of Joseph A. Ranck is includable in decedent's gross estate.

In order that an appropriate decision may be entered reflecting adjustments due to counsel fees and costs of this proceeding,

*Decision will be entered under Rule 50.*