ESTATE OF EFFIE KELLS JONES, DECEASED, CITIZENS FIRST NATIONAL BANK OF RIDGEWOOD, ADMINISTRATOR C.T.A., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5138–69.    Filed April 8, 1971.

*Joseph J. MacDonald,* for the petitioner.
*John James O'Toole,* for the respondent.

QUEALY, *Judge:* The respondent determined a deficiency in estate tax in the amount of $83,511.87. The ultimate issue in this case is whether Effie Kells Jones had a general power of appointment sufficient to cause the corpus of her husband's testamentary trust to be includable in her gross estate under section 2041.[1]

### FINDINGS OF FACT

The facts were fully stipulated, and these facts and exhibits incorporated therein are so found.

---

[1] All statutory references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.

The petitioner is a fiduciary as administrator c.t.a. of the Estate of Effie Kells Jones, deceased, by appointment of the Bergen County Surrogate's Office, State of New Jersey, under date of December 6, 1965. Petitioner, at the time of filing the petition herein, had its principal office in Ridgewood, N.J. The Federal estate tax return was filed with the district director of internal revenue, Newark, N.J., on January 19, 1967.

Effie Kells Jones (hereinafter the decedent) married J. Morgan Jones in 1932. At that time, the decedent was 46 years of age, and her husband was 55 years of age. Each had been married previously and each had one child of the prior marriage. J. Morgan Jones' child, Emma Louise Rector, was already married in 1932 and bore children in 1935 and 1938.

J. Morgan Jones executed a will on April 29, 1940. The will provided for a testamentary trust in which the decedent and his daughter were given successive life estates. At his daughter's death, the trust principal was to be distributed to the surviving issue of his daughter or if there were no such issue then according to the terms of his daughter's will.

Article Sixth of the will provided, in part:

SIXTH: I give, devise and bequeath to my executors and trustees hereinafter named, all the rest, residue and remainder of my estate, real and personal, of whatever nature and wheresoever situate, including therein any property real and personal, over which I may have power of appointment by will, to collect, recover, receive and take possession thereof, to manage, control, administer, invest and reinvest the same and to receive, collect and recover the income thereon, and to hold and/or dispose of the principal thereof, and the income thereon according to the following terms and conditions and upon the following trusts:

(a) If my said wife, Effie K. Jones, survive me, to pay to her the net income of my residuary estate or of the trust thereof during her lifetime.

(b) If my said wife, Effie K. Jones, survive me, I authorize and empower my executors during the period of their executorship and my trustees thereafter, in cases of emergency or in situations affecting her care, maintenance, health, welfare and well-being to pay over to my said wife (in addition to the said income payments) part or all of the principal of my residuary estate or of the trust thereof, or to use and apply part or all of the principal of my residuary estate, or of the trust thereof, for such purposes. The judgment and discretion of my executors or trustees as to what constitutes an emergency or any such situation, and as to the continuation of any emergency or any such situation and as to how much of the principal of my residuary estate or the trust hereof shall be paid or used therein and to whom it shall be paid and as to how it shall be used and applied and the purposes for which it shall be paid, used or applied, shall be final and conclusive and not subject to inquiry or attack in any court, jurisdiction or proceeding and shall be binding upon all those who shall have or may become entitled to any right, title or interest in or to my said residuary estate or the trust thereof, including any who may be minors or under other legal incapacity or not in being.

In the event of any such payment or use of principal, there shall not be any obligation to refund or reimburse the principal out of the income of my residuary estate or the trust thereof. My corporate executor or trustee shall not be under any duty to see to the application of any moneys so paid to my said wife.

(c) Upon the death of my said wife Effie K. Jones, or upon my death if my said wife Effie K. Jones predecease me, and if my said daughter Emma Louise Rector be then living, to pay to my said daughter Emma Louise Rector during her lifetime the net income of my residuary estate or of the trust thereof or of so much of my residuary estate or of the trust thereof as may then remain.

(d) Upon the death of my said wife, Effie K. Jones or upon my death, if my said wife Effie K. Jones predecease me, and if my said daughter Emma Louise Rector be then living, I authorize and empower my executors during the period of their executorship and my trustees thereafter, in cases of emergency or in situations affecting her care, maintenance, health and welfare and well-being to pay over to my said daughter (in addition to the said income payments) part or all of the principal of my residuary estate or of the trust thereof, or to use and apply part or all of the principal of my residuary estate, or of the trust thereof, for such purposes. * * *

Article Tenth of the will provided, in part:

TENTH: I nominate, constitute and appoint my wife, Effie K. Jones and Commercial Trust Company of New Jersey, a corporation of the State of New Jersey, having its principal office at 15 Exchange Place, Jersey City, New Jersey, Executors of and Trustees under this will.

J. Morgan Jones died on July 10, 1949. His will of April 29, 1940, was never republished by codicil or otherwise. J. Morgan Jones was survived by the decedent, his daughter, and his two grandchildren.

In addition to their interests in the testamentary trust, J. Morgan Jones distributed to the decedent and his daughter property included in his taxable estate in the following manner:

| | Decedent | Emma Louise Rector |
|---|---|---|
| Common stock | | $23, 500 |
| Real estate | $34, 500. 00 | |
| Savings bonds (jointly owned) | 12, 311. 75 | |
| Insurance | 5, 000. 00 | 8, 500 |
| Personal effects | 1, 030. 00 | |
| Total | 52, 841. 75 | 32, 000 |

An annuity contract with Mutual Benefit Life Insurance Co. in favor of Emma Louise Rector as annuitant, was reported in the estate tax return of J. Morgan Jones, at no value. This contract was effective 20 years after the date of death of J. Morgan Jones and is payable at an annual rate of $600 per year for life.

The estate of J. Morgan Jones filed a Federal estate tax return under date of October 4, 1950, which resulted in a determination of total estate tax liability in the sum of $20,281.67. Said return and determination did not include in the marital deduction of $52,841.75

any claim for or allowance of any portion of the assets of the testamentary trust.

The decedent and the Commercial Trust Co. of New Jersey duly qualified on July 22, 1949, as trustees and served as trustees during the lifetime of the decedent. No invasions of principal were ever made by the trustees during the lifetime of decedent and no release, renunciation, disclaimer, or exercise of any power of appointment thereunder was made or effected by the trustees or beneficiary thereof during decedent's lifetime.

The decedent died on November 11, 1965, a resident of Damarest, Bergen County, N.J. She devised her entire estate to her natural daughter Alta Kells Barclay.

At the time of her death, the decedent was both the life beneficiary and the cotrustee of the testamentary trust established by her husband's will. At the time of her death, the decedent had a general power of appointment created after October 21, 1942, over the corpus of the trust established under the will of J. Morgan Jones and that power was not limited by an ascertainable standard relating to health, education, support, or maintenance of the decedent.

The value of the assets in the trust under the will of J. Morgan Jones as of November 11, 1965, totaled $303,805.76. The Federal estate tax return filed for the Estate of Effie Kells Jones used the optional valuation date, and the valuation of the assets in the trust under the will of J. Morgan Jones as of November 11, 1966, the actual valuation date, was $265,335.75.

The estate tax return did not include the value of the trust assets in the taxable estate. In his notice of deficiency, the respondent increased the taxable estate by $265,335.75, the value of the assets in trust.

By an instrument dated February 21, 1969, Emma Louise Rector irrevocably refused, disclaimed, and renounced all and every right to participate in any and all decisions with respect to the payment or use of the trust assets for her personal benefit and stated that the corporate trustees solely possessed and exercised all authority and powers as testamentary trustee.

#### OPINION

The ultimate question in this case is whether the decedent had such a general power of appointment over the corpus of the trust established by her husband's will as to cause the value of the trust to be includable in her estate for purposes of the Federal estate tax. That question is controlled by section 2041.

Under section 2041(b)(1), a general power of appointment is defined as a power which is exercisable in favor of the decedent, his estate, his creditors, or the creditors of his estate.

However, section 2041 (b) (1) (A) provides that a power to consume, invade, or appropriate property for the benefit of the decedent which is limited by "an ascertainable standard relating to the health, education, support, or maintenance of the decedent shall not be deemed a general power of appointment," with the taxable result that the property subject to that limited power will not be included in the decedent's gross estate.

Section 20.2041–1(c) (2), Estate Tax Regs., provides that a power is limited by an ascertainable standard "if the extent of the holder's duty to exercise and not to exercise the power is reasonably measurable in terms of his needs for health, education, or support (or any combination of them)," deeming maintenance to be synonymous with support. A power to use property for the comfort, welfare, or happiness of the holder of the power is held by this regulation not to be limited by the requisite standard.

In addition, section 2041 distinguishes between general powers of appointment created before and after October 21, 1942. Property subject to a general power created before October 21, 1942, is not taxable to the estate of the donee of the power unless the power is exercised in a testamentary fashion, that is, by will or by an inter vivos conveyance taxable under sections 2035–2038. See sec. 2041(a) (1); sec. 20.2041–2(a) (c), Estate Tax Regs.; Lowndes & Kramer, Federal Estate and Gift Taxes, sec. 12.10, p. 265 (1962). However, property subject to a general power created after October 21, 1942, is taxable to the estate of the donee of the power whether or not the power was exercised. See sec. 2041(a) (2); sec. 20.2041–3 (a) (2), Estate Tax Regs.

Ordinarily since a will does not speak until the testator's death, a power created by will is created at the date of the death of the donor of the power. Sec. 20.2041–1(e), Estate Tax Regs.; Lowndes & Kramer, *supra* at sec. 12.9, p. 264. Section 2041(b) (3), however, carves out an exception to this general rule by providing that a power created by a will executed on or before October 21, 1942, is considered a power created on or before that date if the testator dies before July 1, 1949, without having republished the will by codicil or otherwise after October 21, 1942.

We will now consider, in light of this statutory background, the reasons advanced by the petitioner in support of his position that the value of the trust created by the will of J. Morgan Jones should not be included in the value of the decedent's gross estate. The petitioner makes a three-pronged attack on the respondent's determination arguing (1) that the power meets the test of an ascertainable standard, (2) that the decedent as a mere coholder of fiduciary discretion did not have a general power of appointment over the trust corpus, and

(3) that section 2041(b)(3) would be arbitrary and capricious as applied to the decedent unless the year 1949 in that statute is read as 1951.

*Limitation of the Power.*—The power to consume in "situations affecting [the decedent's] * * * maintenance, [and] health," are within the statutory exception. Thus, the question is whether the remaining part of the phrase "in cases of emergency or in situations affecting * * * [the decedent's] care, * * *, welfare and well-being" conferred a power to consume which extended beyond the statutory exception of an ascertainable power for health, education, support, or maintenance.

Resolution of this question requires us to look to the grant of power given to the decedent and determine whether it is clearly limited in its exercise to matters relating to health, education, support, and maintenance. *Peoples Trust Co. of Bergen County* v. *United States*, 412 F. 2d 1156 (C.A. 3, 1969); *Strite* v. *McGinnes*, 330 F. 2d 234 (C.A. 3, 1964), certiorari denied 379 U.S. 836 (1964); *Estate of Josephine R. Lanigan*, 45 T.C. 247 (1965). This determination of the legal rights and interests possessed by the decedent under the trust is to be made in light of local law. *Peoples Trust Co. of Bergen County* v. *United States, supra; Miller* v. *United States*, 387 F. 2d 866 (C.A. 3, 1968); *Strite* v. *McGinnes, supra; Estate of Josephine R. Lanigan, supra.*

To determine the nature of decedent's interest under New Jersey law, we must construe the will of J. Morgan Jones "to ascertain and give effect to the 'probable intention of the testator,' " *Fidelity Union Trust Co.* v *Robert*, 36 N.J. 561, 178 A. 2d 185 (1962), having in mind that when construing wills "the controlling consideration is the effect of the words as actually written." *In re Armour's Estate*, 11 N.J. 257, 94 A. 2d 286 (1953); see also *Peoples Trust Co. of Bergen County* v. *United States, supra.*

The will reveals that the decedent and life beneficiary was intended to be the main object of the testator's bounty. This suggests that the power conferred be given a broad construction, *Sibson* v. *First Nat. Bank & Trust Co. of Paulsboro*, 61 N.J. Super 88, 160 A. 2d 76 (1960), modified 64 N.J. Super. 225, 165 A. 2d 800 (1960); see also *Peoples Trust Co. of Bergen County* v. *United States, supra.* While the testator did make gifts of value to his daughter, this does not militate against our finding that the testator intended to liberally benefit his wife during her lifetime. *Sibson* v. *First Nat. Bank & Trust Co. of Paulsboro, supra; Citizens First National Bank of Ridgewood* v. *United States*, 288 F. Supp. 750 (D. N.J. 1968); see also *Peoples Trust Co. of Bergen County* v. *United States, supra.* This conclusion that the decedent intended liberal invasions for the benefit of his wife is strengthened when one considers that Emma Louise Rector, the testa-

tor's daughter, was to receive on the death of the decedent only "the net income of my residuary estate or of the trust thereof or of so much of my residuary estate or of the trust thereof as may then remain." Cf. *Strite* v. *McGinnes, supra.*

The words used in the grant "situations affecting [the decedent's] * * * welfare and wellbeing" must be given their ordinary meaning and as such go far beyond situations affecting the decedent's health, education, support, or maintenance. If the decedent had sought to exercise the power granted by her husband's will, we do not believe that a New Jersey court would so limit the decedent's power to consume.

The words "comfort and well-being" [2] and "comfort, welfare, or happiness" [3] have been held to confer a power to consume which extends beyond the statutory exception, and it is clear that much like those words "welfare and well-being" also conferred on the decedent a power to consume which extended beyond an ascertainable power for her health, support, or maintenance.

While it is true that the words "in cases of emergency" were words of limitation in contrast to an absolute power the disjunctive character of the grant indicates that the decedent could have invaded the corpus in "situations affecting her * * * welfare and wellbeing" whether or not that situation was an emergency. Cf. *Strite* v. *McGinnes, supra.*

We find nothing that recommends the petitioner's argument that the word "situation" limited the decedent's power of invasion and find it unnecessary to consider the words "in cases of emergency or in situations affecting [the decedent's] * * * care," against the standards of section 2041(b) (1) (A).

*Decedent as Coholder of the Power.*—With one exception, the estate tax is concerned only with general powers of appointment which are defined to include powers where the decedent was at the time of death both the holder and potential appointee of the power.[4] Sec. 2041(a) (2) and (b) (1). There is no question that a trustee with discretionary power to distribute corpus is considered a holder of a power under section 2041. See sec. 20.2041–1(b) ; sec. 20.2041–3(c) (2), exs. (1) and (2), Estate Tax Regs.; 2 Mertens, Federal Gift and Estate Taxation, sec. 19.05, p. 498 fn. 67. There is also no question that the decedent in the instant case was a potential appointee as the trustees' power to invade corpus was a power exercisable, in her favor. In the petitioner's view, however, the decedent did not have a general power of appoint-

---

[2] *Miller* v. *United States*, 387 F. 2d 866 (C.A. 3, 1968).

[3] Sec. 20.2041–1(c) (2), Estate Tax Regs.

[4] A power of appointment is the power to dispose of property to an appointee which the donee, i.e., the holder of the power, does not own. No distinction exists for estate tax purposes between potential and actual appointees of powers of appointment created after Oct. 21, 1942. In other words, it does not matter whether or not a power is exercised in the decedent's favor.

ment in the definition sense of that legal concept as the decedent was only a coholder who shared her fiduciary discretion with the corporate trustee.

The estate tax treatment of a power of appointment created after October 21, 1942, which is exercisable by the decedent only in conjunction with another person is governed by section 2041(b)(1)(C) which provides that such a power is not a general power of appointment if it is not exercisable by the decedent except with the consent or joinder of (1) the creator of the power, or (2) a person having a substantial interest in the property which is adverse to the exercise of the power in favor of the decedent. With respect to the second exception, which is the only provision of possible application in the instant case, section 20.2041-3(c)(2), Estate Tax Regs., states that "a coholder of the power has no adverse interest merely because of his joint possession of the power." As much has been recognized by the courts which have included the value of trust corpus in a decedent's gross estate where the decedent was the coholder with a corporate trustee of the discretionary power to distribute corpus and the potential appointee of that property. *Miller* v. *United States, supra; Estate of Josephine R. Lanigan, supra.*

The decedent had a general power of appointment in the definitional sense of that legal concept under section 2041. The fact that the corporate trustee had to join with the decedent in the exercise of the power does not change the fact that the decedent had at the time of her death a general power of appointment within the meaning of section 2041(a)(2) and (b)(1). *Estate of Josephine R. Lanigan, supra.*

*Post 1942 Power.*—J. Morgan Jones died on July 10, 1949. The power of appointment held by the decedent was "created" on that date. Sec. 20.2041-1(e), Estate Tax Regs. Had J. Morgan Jones died 10 days earlier, that is on June 30, 1949, or before, the power held by the decedent would be considered a power created on or before October 21, 1942, under section 2041(b)(3) and the value of the property subject to that power would not have been included in the decedent's gross estate as the decedent failed to exercise that power. See sec. 2041(a)(1).

In the petitioner's view, it is a matter of simple statutory construction to read to the July 1, 1949, cutoff date contained in section 2041 (b)(3) as July 1, 1951. The provision of the statute is as follows:

(3) DATE OF CREATION OF POWER—For purposes of this section, a power of appointment created by a will executed on or before October 21, 1942, shall be considered a power created on or before such date *if the person executing such will dies before July 1, 1949,* without having republished such will, by codicil or otherwise, after October 21, 1942. [Emphasis added.]

The provision clearly states the cutoff date to be July 1, 1949. Where the language of a statute is clear and admits of no more than one mean-

ing, the duty of interpretation does not arise and the rules which are to aid doubtful meaning need no discussion. *Caldwell* v. *United States*, 114 F. 2d 995 (C.A. 3, 1940) ; *Alexander C. Yarnall*, 9 T.C. 616 (1947), affd. 170 F. 2d 272 (C.A. 3, 1948).

The petitioner also contends that the classification of the power held by the decedent as a power created after October 21, 1942, requires the application of retroactive legislation, sec. 2041(b)(3), and therefore to apply section 2041 to the decedent would be to subject her to taxation in violation of the fifth amendment by taking property without due process of law.

Section 2041 was for the most part carried forward from the Powers of Appointment Act of 1951, 65 Stat. 91. That statute was applied to the decedent as of the date of her death in 1965, that is 14 years after the statute was enacted. Thus, the taxing statute on its face appears to apply prospectively to the decedent.

However, the petitioner contends that the Powers of Appointment Act of 1951 deprived the decedent of derivative rights with respect to that power when that Act in 1951 limited testamentary powers of appointment created on or before October 21, 1942, to powers of appointment created by wills executed on or before October 21, 1942, only if the testator died before July 1, 1949. Specifically, the petitioner contends that under the law in effect at the date of death of the testator, J. Morgan Jones, on July 10, 1949, the power would have been classified as a power created on or before October 21, 1942, but that the law effective on July 10, 1949, was retroactively changed by the Revenue Act of 1951.

The petitioner's contention must be rejected for at least two reasons. First, the petitioner has not shown that the power in question would have been considered a power created on or before October 21, 1942, under section 403 of the Revenue Act of 1942, 56 Stat. 944. Our reading of that law indicates no attempt to change the general rule that a power of appointment created by will is created on the date of the testator's death.

Second, assuming that the power could be classified as one created on or before October 21, 1942, under the Revenue Act of 1942, that classification was changed not in 1951 as assumed by the petitioner but in 1948, a full year prior to the testator's death. See S. Rept. No. 382, 82d Cong., 1st Sess., p. 8 (1951), which states as follows:

Section 1(b) of the bill [Powers of Appointment Act of 1951] provides that a power of appointment created by a will executed on or before October 21, 1942, the date of enactment of the 1942 act, shall be considered a preexisting power [i.e., powers created on or before October 21, 1942] if the testator dies before July 1, 1949, without having republished the will, by codicil or otherwise, after October 21, 1942. *This merely continues in force a provision which was enacted in 1948 (Public Law 635, 80th Cong.).* [Emphasis added.]

See also section 2, Pub. L. No. 635, 62 Stat. (Part 1) 388 (1948), which states as follows:

For the purposes of sections 403 and 452 of the Revenue Act of 1942, a power to appoint created by a will executed on or before October 21, 1942, shall be considered a power created on or before such date if the person executing such will dies before July 1, 1949, without having republished such will, by codicil or otherwise after October 21, 1942.

The taxing statute as applied in this case is prospective in its application and does not violate the due process clause of the fifth amendment. *Ewing* v. *Rountree*, 346 F. 2d 471 (C.A. 6, 1965).

*Decision will be entered under Rule 50.*

---

[1] All statutory references are to the Internal Revenue Code of 1954 unless otherwise indicated.