MILDRED R. FICCHI, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; JOSEPH R. AND ELIZABETH A. FICCHI, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Ficchi v. Commissioner
Docket Nos. 27109-84, 31182-84.
United States Tax Court
T.C. Memo 1986-191; 1986 Tax Ct. Memo LEXIS 418; 51 T.C.M. (CCH) 998; T.C.M. (RIA) 86191; 7 Employee Benefits Cas. (BNA) 2047; May 12, 1986; As Amended July 10, 1986 William G. Rosing, for the petitioner in docket No. 27109-84. Brian S. Grach and Robert J. Masini, for the petitioners *420 in docket No. 31182-84. Michael J. Calabrese, for the respondent. VANDERVORT
MEMORANDUM OPINION VANDERVORT, special Trial Judge: These cases were heard pursuant to the provisions of section 7456 and Rule 180. [1] In these consolidated cases respondent determined the following deficiencies: Docket No.
Petitioner
Year
Deficiency
27109-84
Mildred R. Ficchi
1981
$1,245.00
31182-84
Joseph R. Ficchi and
Elizabeth A. Ficchi [2]
1981
1,889.00
The issues for our decision are (1) whether payments made under a temporary order by petitioner - Joseph R. Ficchi to petitioner - Mildred R. Ficchi were payments made for the latter's support or maintenance and thus includable in Mildred R. Ficchi's gross income under section 71 and deductible by Joseph R. Ficchi pursuant to section 215; *421 and, (2) whether the payment of 50% of petitioner - Joseph R. Ficchi's military pension to Mildred R. Ficchi pursuant to the dissolution of their marriage is a property settlement or alimony, the latter being includible in Mildred R. Ficchi's gross income under section 71. These cases were submitted under Rule 122. All facts have been stipulated. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioners Joseph R. Ficchi (Joseph) and Elizabeth A. Ficchi and petitioner Mildred R. Ficchi (Mildred) were residents of Lake County, Illinois at the time they filed the petitions in their respective cases. Joseph began employment as an active duty serviceman in the Navy in 1948. On February 14, 1953 Joseph and Mildred were married. Joseph eventually retired from active duty in the Navy in 1970. In December of 1979, after 26 years of marriage, Mildred and Joseph parted and began maintaining separate households. Joseph filed for divorce on January 8, 1980, in the Circuit Court for the Nineteenth Judicial Circuit, Lake County, Illinois. On April 9, 1980 the Court entered the following order (the temporary order): 1. That the Petitioner *422 [Joseph] pay to the Respondent [Mildred] the sum of $325.00 per month towards the household expenses. Said sum to be payable $100.00 by April 18, 1980 and $225.00 by April 30 and $325.00 per month thereafter until further order of court. 2. That the Petitioner [Joseph] shall pay the remaining trailer payments, the Sears and Visa payments; the insurance due on his and her car, but the insurance on the wife's car is to be paid only for a three month period. The following year, on January 21, 1981, Mildred counter-petitioned the court for legal separation. In her counter-petition Mildred sought, inter alia, maintenance for herself and a judgment of legal separation. This counter-petition was subsequently dismissed on May 6, 1981. Shortly thereafter, on June 15, 1981, the court entered a Judgment for Dissolution of Marriage (Judgment) which provided in pertinent part: THE COURT DOTH FIND: 1. That this Court has jurisdiction of the parties and the subject matter herein; that it has considered, approved, and/or made provisions for the maintenance of either spouse and the disposition of the property. * * * 6. That the parties hereto have entered into an oral property *423 settlement agreement, settling and disposing of all matters of the division of the marital and non-marital property, maintenance of either spouse and all other matters pertaining hereto. That said oral agreement as hereinafter set forth is made a part of this Judgment: A. Respondent is to receive ONE-HALF (1/2) of the Petitioner's government retirement check each month. This is to remain for life regardless of the fact whether she remarries or not. The Petitioner shall arrange to have said payments made directly to the Respondent from the pay center in Cleveland, Ohio. The government retirement check shall be the gross check minus only the taxes due on said amount. B. That the Respondent may avail herself of any legislation in the future which may alter, change or in any way involve her status insofar as her being entitled to the share of pension to be paid to her and may avail herself of any Federal benefits to which she may be or may later become entitled. C. The Petitioner is to pay unto the Respondent past due monies owed to her, namely: May, 1980, the sum of THREE HUNDRED TWENTY-FIVE AND NO/100's ($325.00) DOLLARS: December, 1980, the sum of ONE HUNDRED AND NO/100's *424 ($100.00) DOLLARS; January, 1981, ONE HUNDRED AND NO/100's ($100.00) DOLLARS; and insurance in the sum of FIVE HUNDRED FIFTY AND NO/100's ($550.00) DOLLS [sic], for a total of ONE THOUSAND SEVENTY-FIVE AND NO/100's ($1,075.00) DOLLARS. D. The Respondent is to receive as her sole and separate property, free and clear of any claims of the Petitioner, the 1970 Sterling trailer and all of its contents. E. The Respondent is to receive as her sole and separate property, free and clear of any claims of the Petitioner the 1977 Buick automobile, which is presently in her possession. F. Except as hereinabove provided, each party shall retain such marital and non-marital assets as now in their respective possessions free and clear of any claims, one to the other. G. Except as hereinabove provided, each party [shall] waive any and all claims to maintenance, one from the other, past, present and future. * * * IT IS, THEREFORE, ORDERED AND ADJUDGED as follows: * * * B. That the property settlement agreement hereinabove referred to in Paragraph 6, subparagraphs A through J, both inclusive, be and the same are hereby confirmed and merged in this Judgment, and the duties and *425 obligations of the parties thereunder are made enforceable hereby. * * * Sometime after the Judgment and before the close of 1981, Joseph was married to Elizabeth A. Ficchi. During 1981 Mildred received the following payments pursuant to the temporary order. Date of Check
Amount of Check
1-30-81
$ 325
2-28-81
325
3-30-81
300
4-29-81
325
5-12-81
175
5-29-81
385
6-11-81
900
$2,735
In the second half of 1981 Mildred received the following payments from Joseph pursuant to the Judgment. These payments, which constituted one-half of Joseph's military pension, were awarded to Mildred in paragraph 6.A of the Judgment. Date of Check
Amount of Check
6-30-81
$ 385
7-30-81
385
9-3-81
385
10-9-81
385
10-30-81
385
12-1-81
385
$2,310
Therefore, Joseph made payments totaling $5,045 to mildred in 1981 ($2,735 under the temporary order plus $2,310 of pension benefits pursuant to the Judgment). On his 1981 Federal income tax return Joseph treated these payments as alimony and deducted them pursuant to section 215. In addition he erroneously deducted a $385 pension payment made to Mildred in 1982, so that his total alimony *426 deduction for 1981 was $5,430. Mildred included neither the payments made under the temporary order nor the pension payments made pursuant to the Judgment on her Federal income tax return for 1981. Respondent issued separate notices of deficiency to Joseph and Mildred on July 8, 1984. Joseph's notice reflected a deficiency of $1,889. Respondent based the deficiency upon the determination that the amounts paid to Mildred were not alimony under section 71(a) and, therefore, not deductible under section 215. Mildred's notice reflected a deficiency of $1,245 and was based on respondent's position that the amounts received from Joseph were alimony under section 71(a) and, therefore, includible in gross income. Petitioner Joseph argues that the payments made under the temporary order and the pension payments made under the Judgment are alimony payments paid for Mildred's support and maintenance. Petitioner Mildred argues that the payments made under the temporary order are not alimony because they were advanced to her in order to pay off joint credit obligations of the couple. Further, Mildred contends that the pension payments are not alimony but are part of a property settlement.
*427 The first issue we must resolve is whether payments (in the amount of $2,735) made under the temporary order were for Mildred's support and maintenance and therefore includible in her 1981 gross income pursuant to section 71(a). Our resolution of this issue will dictate the answer to the collateral issue of whether Joseph may deduct the $2,735 paid in 1981 under section 215. Under section 71(a), the former spouse's gross income includes periodic payments received from the taxpayer: (1) under a decree of divorce or separate maintenance, (2) under a written separation agreement, or (3) under a decree for support. [3]
Section 215 provides a deduction for amounts paid by a taxpayer to a former spouse if the former spouse is required to include these amounts in gross income under section 71(a). [4]
*428 Under section 71(a)(3), periodic support payments received bt the wife from her husband pursuant to a court decree while they are separated are taxable as income. Furgatch v. Commissioner,74 T.C. 1205, 1209 (1980). The Congressional purpose behind this subsection is to embrace in gross income all support payments made pursuant to judicial sanction where spouses are in fact living apart. Knobler v. Commissioner,59 T.C. 261, 263 (1972). See also section 1.71-1(b)(3), Income Tax Regs.
At the time Joseph made the payments under the temporary order, the petitioners were living apart. These payments were periodic in nature, occurring approximately once a month for six months in 1981. Joseph made these payments pursuant to an order of the Circuit Court for the Nineteenth Judicial Circuit, Lake County, Illinois, which designated the payments to be used for the satisfaction of the household expenses of Mildred. Additional sums were required pursuant to the second paragraph of the temporary order to cover credit card payments, trailer *429 payments and insurance payments. We believe that the payments from Joseph to Mildred for the satisfaction of household expenses were periodic payments made for Mildred's support or maintenance pursuant to a court decree. They were not shown to be payments to satisfy joint credit obligations of the couple as Mildred contends. Such credit obligations were specifically noted and separately provided for in the second paragraph of the temporary order. The first paragraph of the order recites that the sum of $325 per month is to be paid for household expenses.Because of this delineation, we conclude that the payments in question were made for Mildred's support and maintenance. As such, these payments are includible in Mildred's gross income under section 71(a)(3). Because we have determined that the $2,735 in payments made under the temporary order are includible in Mildred's gross income under section 71(a), it follows that Joseph may deduct an equal amount under section 215. [5]
*430 The second issue we must decide is whether the payments to Mildred of 50% of the military pension are periodic payments made in discharge of a legal obligation incurred because of the marital relationship or whether they result from a property settlement made pursuant to the dissolution of Joseph and Mildred's marriage.Again, our resolution of this issue will dictate the tax treatment of these payments for both Mildred and Joseph under sections 71(a) and 215. If we determine that the payments are alimony, they will be deductible by Joseph and taxable to Mildred. If, on the other hand, the division of the military pension is a property settlement, then there will be no such tax effect to either petitioner. [6]
*431 The determination of whether payments are in the nature of alimony or are part of a property settlement does not turn on the labels given to the payments by a court in the divorce decree or by the parties in their agreement. Hesse v. Commissioner,60 T.C. 685, 691 (1973), affd. without published opinion 511 F.2d 1393 (3d Cir. 1975), cert. denied 423 U.S. 834 (1975); Thompson v. Commissioner,50 T.C. 522, 525 (1968). The resolution of the issue requires an examination of all the surrounding facts and circumstances. Wright v. Commissioner,62 T.C. 377, 389 (1974), affd. 543 F.2d 593 (7th Cir. 1976); Hesse v. Commissioner,supra.
Factors which indicate whether the payments are in the nature of a property settlement rather than a support allowance have been enumerated in Beard v. Commissioner,77 T.C. 1275, 1284-1285 (1981). Nevertheless, since we are dealing with a state court division of rights upon dissolution of marriage, we recognize that the property *432 interests of Joseph and Mildred are determined under the laws of the State of Illinois. Schottenstein v. Commissioner,75 T.C. 451, 462 (1980); Estate of Gamble v. Commissioner,69 T.C. 942, 948 (1978). After determining what property interests are conferred upon Mildred and Joseph by state law, the tax treatment of this interest is governed by Federal tax law. Estate of Gamble,supra;Estate of Lanigan v. Commissioner,45 T.C. 247 (1965). We begin our inquiry with an analysis of the statutory and judicial authority governing the division of property and the award of alimony in Illinois. The divorce of Joseph and Mildred is governed by the Illinois Marriage and Dissolution of Marriage Act (Marriage Act) which became effective in 1977. Ill. Rev. Stat. ch. 40, section 101 et seq. (Smith-Hurd 1980). The passage of the Marriage Act introduced equitable distribution to Illinois. In determining a division of property pursuant to a divorce, the court is directed to distinguish between "Marital" and "nonmarital" property, dividing *433 only the former between the spouses.Ill. Rev. Stat. ch. 40, section 503 (Smith-Hurd 1980).Section 503 of the Marriage Act states the following in pertinent part: (a) For purposes of this Act, "marital property" means all property acquired by either spouse subsequent to the marriage, except the following, which is known as "non-marital property": (1) property acquired by gift, bequest, devise or descent; (2) property acquired in exchange for property acquired before the marriage or in exchange for property acquired by gift, bequest, devise or descent; (3) property acquired by a spouse after a judgment of legal separation; (4) property excluded by valid agreement of the parties; (5) the increase in value of property acquired before the marriage; and (6) property acquired before the marriage. In addition "[a]ll property acquired by either spouse after the marriage and before judgment of dissolution of marriage * * * is presumed to be marital property * * *." Section 503(b), Marriage Act. Once the court has determined which items are marital property and which items are non-marital *434 property, the court will divide the marital property (without taking into account marital misconduct) in just proportions after considering all relevant factors including: (1) the contribution or dissipation of each party in the acquisition, preservation, or depreciation or appreciation in value, of the marital and non-marital property, including the contribution of a spouse as a homemaker or to the family unit; (2) the value of the property set apart to each spouse; (3) the duration of the marriage; (4) the relevant economic circumstances of each spouse when the division of property is to become effective, including the desirability of avarding the family home, or the right to live therein for reasonable periods, to the spouse having custody of the children; (5) any obligations and rights arising from a prior marriage of either party; (6) any antenupital agreement of the parties; (7) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties; (8) the custodial provisions for any children; (9) whether the apportionment is in lieu of or in addition to maintenance; and *435 (10) the reasonable opportunity of each spouse for future acquisition of capital assets and income. (d) The court may protect and promote the best interests of the children by setting aside a portion of the jointly or separately held estates of the parties in a separate fund or trust for the support, maintenance, education, and general welfare of any minor, dependent, or incompetent child of the parties. [Section 503(c), (d), Marriage Act.] Thus, the assets of a marriage are to be divided much like the distribution of assets pursuant to a dissolution of a partnership. The primary objective of the court is to effect a division of marital property in order to put the parties in a position from which they can start anew. In re Marriage of Lee,78 Ill. App. 3d 1123, 398 N.E.2d 126, 133 (1979). Thus, the legislative intent in promulgating the Marriage Act is to: create a system of property division upon dissolution of marriage that is more equitable than that which previously existed in this State. * * * For instance, by giving both spouses an interest in "marital *436 property" upon dissolution of marriage, the legislature sought to award economic credit in the distribution of property for indirect or domestic contributions to the accumulation of property and sought to replace the concept of post marital support through alimony with one of post-marital stability through a just distribution of marital property and assets. * * * [Kujawinski v. Kujawinski,71 Ill. 2d 563, 376 N.E.2d 1382, 1388 "(1978); emphasis supplied.]" Following the objectives stated above, Illinois courts hold that the right to a pension or profit sharing interest is "property" under section 503 of the Marriage Act. In re Marriage of Hunt,78 Ill. App. 3d 653, 397 N.E.2d 511, 516 (1979). "Accordingly, it is clear that the pension benefits, to the extent they were earned during the marriage, are marital property although they will not actually be paid until after the marriage has been dissolved." Pieper v. Pieper,79 Ill. App. 3d 835, 398 N.E.2d 868, 871-872 (1979). See also In re Marriage of Campise,115 Ill. App. 3d 610, 450 N.E.2d 1333, 1337 (1983); *437 In re Marriage of Smith,114 Ill. App. 3d 47, 448 N.E.2d 545, 549 (1983). Thus, the State of Illinois treats an individual's interest in a pension right as a right in property and not as a right to future income. In re Marriage of Fairchild,110 Ill. App. 3d 470, 442 N.E.2d 557, 561 (1982). Notwithstanding the weight of Illinois law in this area, petitioner-Joseph argues that the division of pension rights cannot be considered a division of "property" for Federal tax purposes because of the United States Supreme Court decision in McCarty v. McCarty,453 U.S. 210 (1981). In McCarty, the Supreme Court determined that a community property state court could not divide, as part of the marital property, a non-disability military retirement pension. The retirement pension was the exclusive benefit of the military serviceman. The Court relied on the argument that to decide otherwise would threaten great harm to a clear and substantial Federal interest. This decision was rendered on June 26, 1981, eleven days after the Lake County Circuit Court entered the Judgment for Dissolution of Marriage for Mildred and Joseph. Neither party *438 appealed the state court's decision and the Judgment became final. Subsequent to the McCarty decision the Illinois Supreme Court recognized that military non-disability retirement pay could no longer be apportioned by the state courts pursuant to a dissolution of marriage. In re Marriage of Musser,87 Ill. 2d 68, 429 N.E.2d 530, 531 (1981). However, for all judgments of dissolution entered before the decision in McCarty and not appealed thereafter, the doctrine of res judicata applies. This is true even when the final unappealed judgment may be wrong or rest on a legal principle which has been overruled. Federated Dept. Stores v. Moitie,452 U.S. 394, 398 (1981). "A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Commissioner v. Sunnen,333 U.S. 591, 597 (1948). Since the Judgment entered on June 15, 1981 was never appealed and became final, the McCarty decision is precluded from having an effect because of the *439 doctrine of res judicata. Accordingly, the pension rights apportioned in the Judgment were properly adjudged to be property rights under existing Illinois law and were equitably divided pursuant to a dissolution of marriage. This result would obtain even if the doctrine of res judicata did not exist. The year after McCarty was decided, Congress made its disagreement with the decision apparent. In the Uniform Former Spouses' Protection Act, Pub. L. 97-252, 96 Stat. 718, 730-738 (1982), Congress decreed (at section 1002(a)) that "a court may treat disposable retired or retainer pay payable to a member for pay periods beginning after June 25, 1981, either as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction of such court." Codified at 10 U.S.C. section 1408(c)(1)(1982).See, Savings and Profit Sharing Fund of Sears Employees v. Gago,717 F.2d 1038 (7th Cir. 1983). In effect, Congress legislated the McCarty decision out of existence by making the legislation retroactive to the day before the decision in McCarty.
Therefore, in accordance with the reasons stated *440 above, Mildred need not include in income, under section 71(a), the portion of the pension payments she received in 1981 pursuant to the Judgment. Because of this conclusion, Joseph may not deduct, under section 215, the portion of the pension payments turned over to Mildred pursuant to the Judgment. The portion of the pension payments received by Mildred pursuant to the Judgment shall not be included in Joseph's income. [7]
Decisions will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise stated. All Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated. ↩
2. Elizabeth A. Ficchi is a petitioner in this case solely by virtue of having filed jointly with Joseph R. Ficchi for the year in question.↩
3. SEC. 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (a) GENERAL RULE.-- (1) DECREE OF DIVORCE OR SEPARATE MAINTENANCE.--If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation. (2) WRITTEN SEPARATION AGREEMENT.--If a wife is separated from her husband and there is a written separation agreement executed after the date of the enactment of this title, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such agreement is executed which are made under such agreement and because of the marital or family relationship (or which are attributable to property transferred, in trust or otherwise, under such agreement and because of such relationship). This paragraph shall not apply if the husband and wife make a single return jointly. (3) DECREE FOR SUPPORT.--If a wife is separated from her husband, the wife's gross income includes periodic payments (whether or not made at regular intervals) received by her after the date of the enactment of this title from her husband under a decree entered after March 1, 1954, requiring the husband to make the payments for her support or maintenance. This paragraph shall not apply if the husband and wife make a single return jointly. ↩
4. SEC. 215. ALIMONY, ETC., PAYMENTS. (a) GENERAL RULE.--In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. No deduction shall be allowed under the preceding sentence with respect to any payment if, by reason of section 71(d) or 682↩, the amount thereof is not includible in the husband's gross income.
5. No explanation was given as to why two payments were less than the required $325 per month, or why one payment was well in excess of $325. Therefore, we must assume that all the payments made from January 30, 1981 to June 11, 1981 were for Mildred's support and maintenance. The total of these payments is $2,735.↩
6. See, e.g., Schottenstein v. Commissioner,75 T.C. 451, 456 (1980), where this Court stated: "If the payments required under * * * the separation agreement effected a property division or satisfied [the wife's] property rights, they would neither be includible in her gross income under section 71(a) nor deductible by [the husband] under section 215, since they would be capital in nature." (Emphasis added.) In the notice of deficiency issued to Mildred the Commissioner determined that the payments from the military pension are alimony and must be included in income under section 71(a). In the notice of deficiency issued to Joseph, the Commissioner took a contrary position stating that the pension payments made to Mildred are not alimony and are therefore not deductible under section 215. In addition, the notice stated that lump sum cash or private settlements are similarly not deductible. Respondent argued for the first time on brief that if the payments to Mildred did constitute a distribution of marital property that such payments would be taxable to her as a pension pursuant to section 61(a)(11). This theory is not found in either notice of deficiency, respondent's answer, nor is there any indication in the Stipulation of Facts or attached exhibits that such an argument would be advanced. This Court has consistently refused to consider issues first raised on brief when surprise and prejudice are found to exist. Robertson v. Commissioner,55 T.C. 862, 865 (1971); Philbrick v. Commissioner,27 T.C. 346, 353↩ (1956). We believe that petitioner Mildred is unfairly prejudiced and is unable to adequately respond to an argument advanced after the submission of the case under Rule 122. We will simply not allow respondent to assert new issues into a case in the eleventh hour. Accordingly, we will not decide the merits of respondent's untimely contention at this time. Thus, respondent's argument shall be reserved for another day.
7. It cannot be ascertained from the Stipulation of Facts or the exhibits attached thereto, as to how the taxes on the pension payments were to be computed. The Judgment stated that Mildred should receive one-half of the government retirement check. Further, it stated that "[t]he government retirement check shall be the gross check minus only the taxes due on said amount." It is assumed that the "taxes" referred to are the "Federal taxes withheld from the entire pension payment rather than the actual taxes that Joseph would have to pay due to the inclusion of the check in his gross income for tax purposes.↩